# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**PLAINTIFF DOCTOR**

**VERSUS**

**HOSPITAL SERVICE DISTRICT NO. 3
PARISH OF LAFOURCHE D/B/A
THIBODAUX REGIONAL MEDICAL
CENTER; THE BOARD OF
COMMISSIONERS OF THIBODAUX
REGIONAL MEDICAL CENTER; THE
MEDICAL EXECUTIVE COMMITTEE
OF THE MEDICAL STAFF OF
THIBODAUX REGIONAL MEDICAL
CENTER; THE CREDENTIALS
COMMITTEE OF TRMC AND GREG
STOCK, CHIEF EXECUTIVE OFFICER
OF THIBODAUX REGIONAL MEDICAL
CENTER**

**CIVIL ACTION NO.**

**SECTION:**

**JUDGE:**

**MAGISTRATE:**

*JURY TRIAL DEMANDED*

## COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND DAMAGES, INCLUDING DEMAND FOR JURY TRIAL[1]

Plaintiff Doctor ("Plaintiff"), brings this action against Hospital Service District No. 3 Parish of Lafourche d/b/a Thibodaux Regional Medical Center ("TRMC," "the Hospital, " or "Lafourche HSD"); the Medical Executive Committee of TRMC ("the MEC"); the Board of Commissioners of TRMC ("the Board"); the Credentials Committee of TRMC ("the Credentials Committee"); and Greg Stock[2], the Chief Executive Officer of TRMC, and alleges upon personal knowledge as follows:

---

[1] Plaintiff Doctor will submit verification of this Complaint with the Motion for Preliminary Injunction to be filed in this case.
[2] TRMC, the MEC, the Board, the Credentials Committee and Greg Stock are collectively referred to herein as "Defendants."

## JURISDICTION AND VENUE

### 1.

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the constitution or laws of the United States.  Additionally, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims, as these federal and state claims form part of the same Article III case or controversy.

### 2.

Venue is proper in the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this judicial district and substantially all of the events or omissions giving rise to these claims occurred in this judicial district.

## PARTIES

### 3.

Plaintiff is a person of the full age of majority, domiciled in the Parish of St. Mary, however by profession conducting the practice of medicine substantially in the Parish of Lafourche, State of Louisiana.

### 4.

Made defendant herein is Hospital Service District No. 3 of the Parish of Lafourche d/b/a Thibodaux Regional Medical Center, a hospital service district, as such a public entity serving a political subdivision, which owns and operates Thibodaux Regional Medical Center in the Parish of Lafourche, State of Louisiana.

### 5.

Made defendant herein is the Board of Commissioners of TRMC ("the Board" or "Board of Commissioners"), which acts and has acted, in connection with the events described herein, as

the governing body of TRMC.  At all times pertinent hereto, the Board is operating and doing business within the Parish of Lafourche, State of Louisiana.

6.

Made defendant herein is the Medical Executive Committee of the Medical Staff of TRMC ("the MEC"), an independently organized association of Medical Staff of TRMC, which at all times acted and was actually doing business within the Parish of Lafourche, State of Louisiana.

7.

Made defendant herein is the Credentials Committee of TRMC, which at all times pertinent hereto was operating and doing business in the Parish of Lafourche, State of Louisiana.

8.

Made defendant herein is Greg Stock, individually, and in his capacity as Chief Executive Officer and as agent and officer of TRMC, who is a person of the full age of majority and domiciled in the Parish of Lafourche, State of Louisiana.

**BACKGROUND FACTS**

9.

To introduce and summarize this Complaint: TRMC has schemed and acted to remove Plaintiff from competition in the regional market.  This will financially benefit TRMC.  Plaintiff has had full Obstetrics and Gynecology staff privileges at TRMC for over 12 years, since 2006; Plaintiff also operates a separate practice outside of TRMC.  It is common in the medical industry for physicians with their own independent practice to also have privileges at a hospital for a number of reasons, including generating revenue for the hospital and better serving the medical needs of the region's citizens.  TRMC and its employee physicians have recently all but eliminated more profitable referrals (i.e., non-Medicare/Medicaid referrals) to Plaintiff and similarly situated physician groups.  For the first time in Plaintiff's ten years plus of admission at TRMC, Stock,

TRMC, and the MEC began to cite Plaintiff for fabricated, untrue violations.  TRMC and the Credentials Committee have used those trumped-up violations to suspend Plaintiff's privileges at TRMC and to otherwise deny any effort by Plaintiff to renew those privileges (a procedure that is required every two years).  Thus, Defendants will be able to control the referrals made by doctors practicing at TRMC (whether as employee or by outside doctors with staff privileges) to restrict competition in the regional market.

10.

By way of background, Plaintiff was born in the New Orleans area.  Plaintiff has a Bachelor of Arts degree, with a major in biology and minors in chemistry and psychology, from the University of New Orleans.  Plaintiff also earned a Masters of Business Administration from Tulane University.  Plaintiff received Plaintiff's medical training and Doctor of Medicine degree from Louisiana State University Medical School in New Orleans.  Plaintiff is currently earning a Master's in Healthcare.

11.

After medical school, Plaintiff completed a residency in Obstetrics and Gynecology ("OB/GYN") at West Virginia University in Morgantown, West Virginia.  There, Plaintiff was elected by the faculty to serve as the Administrative Chief Resident.

12.

Since completing an OB/GYN residency, Plaintiff has, since 2003, actively practiced medicine in the State of Louisiana, primarily as an OB/GYN physician.  Plaintiff is licensed and is in good standing with the Louisiana State Board of Medical Examiners.  Plaintiff has been board certified in obstetrics and gynecology by the American Board of Obstetrics and Gynecology (ABOG) since 2006.  Plaintiff has maintained certification each year, as required by ABOG, as a

board certified Obstetrician and Gynecologist through yearly Maintenance of Certification (MOC) procedures.  Each year Plaintiff has achieved academic excellence during the MOC process, participating in the ABOG trial of exemption for academic excellence.  Plaintiff has been recognized for academic excellence in the field of Obstetrics and Gynecology by the ABOG.

13.

Plaintiff is well-credentialed and respected in the field of OB/GYN, which attributes benefit to the patients Plaintiff serves.  Plaintiff is certified by the American Board of Obstetrics and Gynecology.  Plaintiff is a Fellow and a Diplomat of the American College of Obstetrics and Gynecology.  Plaintiff is a member of the International Continence Society, the American Association of Gynecologic Laparoscopists, the International Euro Gynecological Association, the Minimally Invasive Robotics Association, the National Vulvodynia Association, the American Medical Association, the Saint Mary Medical Association and the Louisiana Medical Association.

14.

Plaintiff has been a Chairman of the Hospital Service District in St. Mary Parish in the past and is currently Vice Chairman.  Plaintiff has been a Chairman of various obstetrics and pediatric panels at Teche Regional Center ("Teche"), located in Morgan City, Louisiana, and served various other roles at the hospital, including on the Medical Executive Committee.  Plaintiff has been an associate professor at Tulane University in the OB/GYN department for the past six plus years.

15.

After practicing medicine in Morgan City, with privileges at Teche, for approximately three years beginning in 2003, in May 2006, Plaintiff became an active member of the medical staff (with full privileges) at TRMC.  As Plaintiff rapidly grew the Thibodaux practice, Plaintiff opened an office in Thibodaux, Louisiana in 2012.

16.

From 2006 until 2013, while the only other group competitor to Plaintiff was an independently-owned OB/GYN group, and TRMC did not own and operate any competing OB/GYN medical practice, Plaintiff's privileges at TRMC over the past 12 plus years have allowed Plaintiff to perform thousands of OB/GYN procedures including deliveries and other critical, invasive procedures that are vitally important to the community. These procedures also constitute a large proportion of Plaintiff's practice.

17.

Plaintiff's privileges, which by law form a contract between Plaintiff and TRMC and a Constitutional property right in favor of Plaintiff, were granted to Plaintiff by TRMC after the Hospital reviewed, investigated, and approved Plaintiff's application for privileges.

18.

TRMC's Medical Staff By-Laws ("Bylaws") require a Plaintiff to apply for renewal of privileges at TRMC every two years, including reporting on any facts that might be detrimental to TRMC's renewal of a physician's privileges, specifically including certain violations.

19.

Since first gaining privileges at TRMC in 2006, Plaintiff has applied for renewal of privileges every two years and TRMC has granted every such application. In connection with these five separate reviews and renewals of Plaintiff's privileges, no one associated with TRMC's privileges' renewal process raised any issues with respect to Plaintiff's competency, proper treatment of patients, or compliance with all professional and/or ethical duties as a physician.

20.

Likewise, for almost nine years since TRMC approved Plaintiff's privileges in 2006, no one at TRMC made any allegations of violations against Plaintiff and Plaintiff was not cited for any violations at TRMC.  However, this has recently changed drastically.  During that time between 2006 and 2013, Plaintiff's practice grew dramatically, which impacted TRMC's market share of all ancillary services as Plaintiff was performing all ancillary services within Plaintiff's own medical practice rather than sending these services to TRMC.  As Plaintiff's practice outside of TRMC grew, TRMC purchased the Thibodaux Women's Center, Plaintiff's only competitor in the market for OB/GYN services and subsequently has employed and controlled their own OB/GYN physicians in-house.  After purchasing Plaintiff's only significant outside competitor in 2014, which greatly increased the competition between Plaintiff and TRMC, the Hospital began citing Plaintiff for numerous bogus violations to potentially restrict, suspend or remove Plaintiff's privileges at TRMC, reduce competition in the region, and raise the price TRMC charges its patients and insurers, both private and public.

21.

In the Parish of Lafourche, Plaintiff owns Thibodaux Gynecology and Obstetrics, LLC ("TGO"), a Louisiana limited liability company that employs OB/GYN physicians (including Plaintiff), nurse practitioners, nursing staff, administrative staff, laboratory staff, custodial staff, and various other staff important to operations of this Lafourche Parish medical practice.

22.

TGO and the OB/GYN physicians employed by TGO are direct financial competitors with TRMC, including TRMC's own OB/GYN group.

23.

Specifically, Plaintiff and TGO commercially compete with TRMC's own staff of a least seven OB/GYN physicians.  TRMC earns revenue from the services provided by its own OB/GYN physicians.  Moreover, TRMC financially benefits from referrals made by its own doctors for other medical and related services that are provided.  Therefore, TRMC has a substantial financial motivation for forcing out, restricting, and/or denying medical staff privileges to independent non-employee physicians.

24.

TRMC is the sole community provider of inpatient and outpatient hospital services in Thibodaux, Louisiana.  TRMC is a public hospital, organized to serve a Hospital Service District, as defined in LSA-RS 46:1051, *et. seq,* making TRMC a public entity and a political subdivision of the State of Louisiana.

25.

TRMC is a licensed full service acute-care hospital whose services include OB/GYN services such as delivery-related and other invasive procedures, to patients in Lafourche Parish, including the Thibodaux area.

26.

TRMC is governed by its Board of Commissioners, whose members are appointed by the Lafourche Parish Council.  The Board's actions are governed by state law and the governing documents of TRMC.  The Board's functions include determining, as a final internal authority at the hospital, the membership and privileges of its medical staff.

27.

TRMC's Bylaws designate a Medical Executive Committee (MEC) to act as the governing body of the TRMC Medical Staff.  The MEC is elected by its Medical Staff and consists of the officers of the Medical Staff and two (2) members at-large elected by the Medical Staff.

28.

As defined by the Bylaws, the MEC's responsibilities include reviewing physician credentials and clinical competence as well as making recommendations for appointment, reappointment, delineation and removal of clinical privileges to the Board.

29.

The MEC is supposed to be independent and made of members who are not in competition with the physician who is being reviewed by the MEC.  However, TRMC's MEC that has reviewed charges brought against Plaintiff by TRMC has members who are competitors to Plaintiff, making the MEC naturally biased and not independent.

30.

Greg Stock is the CEO of TRMC.  Mr. Stock is an employee of TRMC.  As CEO of TRMC, Stock reports directly to the Board and, while he does not vote, he participates in and influences the Board's discussions including those pertaining to medical staff privileges.   Stock also participates in other TRMC committees, including but not limited to, the MEC.

31.

In approximately 2013, TRMC purchased an outside OB/GYN medical practice located within the service district staffed by an OB/GYN group of at least seven (7) physicians (referred to herein as "Thibodaux Women's Center" or "the Women's Center").  These physicians help TRMC to directly compete with doctors like Plaintiff and TGO.  Until TRMC gained ownership

and control of Thibodaux Women's Center, Plaintiff had a completely clean record at TRMC, never having a single variance or a single significant problem at the Hospital whatsoever.  During that time period, Plaintiff produced substantial revenue for TRMC, while Plaintiff and the Hospital were in competition with the Women's Center.  Plaintiff's relationship with TRMC changed dramatically after the Hospital purchased the Women's Center.  Incredibly, in the twenty-five months between December 10, 2014 and January 5, 2017, after TRMC gained ownership and control of Plaintiff's sole outside competition, Plaintiff was charged with **five** level 3 or 4 violations, although Plaintiff continued to practice medicine with the exact same high standards and level of care which Plaintiff had always displayed.  Stated differently, in nine years of practice with full privileges at TRMC, Plaintiff received no write-ups of any significance at all, but after the Hospital gained ownership and control of the Women's Center with which Plaintiff directly competed, Plaintiff received five charges of serious violations within a period of about two years.

32.

Since the time it developed its own OB/GYN group, TRMC has been trying to remove Plaintiff and TGO from competition.  By way of background, physicians employed by TRMC are paid a salary, based on a scale.  The monies which they generate beyond their salaries, particularly for ancillary services, go to TRMC.  In contrast, as a private OB/GYN doctor, most of Plaintiff's revenue comes from ancillary services that Plaintiff provides to patients, including testing, laboratory, radiology, ultrasound and other services.  If TRMC is allowed to improperly, and based on false allegations, drive Plaintiff out of business and competition with TRMC, the Hospital will have a monopoly or near monopoly and be able to drive up the prices which it charges patients, insurers, the State of Louisiana and the United States for treatment and ancillary services.

33.

TRMC's Bylaws establish a peer review process, which is supposed to comply with certain procedures outlined in the Health Care Quality Improvement Act of 1986 (the "HCQIA") 42 U.S.C. § 11101 *et seq.* These elements include fundamental "due process" requirements of notice and the right to a <u>fair</u> hearing, including specifically delineated burdens of proof and evidentiary standards. These fundamental rights and standards apply any time a licensed healthcare practitioner is at risk that medical staff privileges would be "adversely affected." If a physician receives a notice of an "adverse recommendation," the Bylaws also entitle that physician to request a fair and impartial appellate review by the Hospital's Board of Commissioners. ("Adverse Recommendation" is defined by the Bylaws as "a recommendation to deny, restrict, reduce, modify, curtail, suspend, revoke, censure, reprimand, place on probation or fail to renew clinical privileges or appointment in the medical center or other health care entity for a reason related to professional competence or professional conduct.") Critically, in its Bylaws, TRMC completely fails to include any statement or directive on burden of proof, order of presentation or applicable evidentiary standard with respect to the "fair hearing" provided for in the Bylaws. This failure clearly violates Plaintiff's equal protection, due process and other constitutional protections, in addition to all notions of fundamental fairness of the hearing process. Such a blatant disregard of core constitutional protections creates a situation in which hearing officers in different cases involving TRMC may impose completely different burdens of proof or evidentiary standards yielding disparate results.

34.

On March 21, 2017, Dr. David Elias, the Chief of Staff of TRMC's MEC sent Plaintiff a letter describing MEC's decision to maintain the levels of violation in three cases initiated by

TRMC against Plaintiff.  MEC reported these violations to the Credentials Committee, which is the committee in charge of privileges.  MEC approved these violation recommendations, even though they are unsupported by evidence, and in fact, are disproved by dispositive evidence showing Plaintiff acted properly and within prevailing standards of care.  In the same correspondence, Dr. Elias revealed that the MEC was bringing five separate actions against Plaintiff.  These charges are likewise groundless and directly contrary to documentary and other evidence, including patient charts and other medical records that prove the allegations false.  In fact, as amplified below, an outside reviewer chosen by TRMC recommended full exoneration of Plaintiff regarding one of those charges, yet the MEC maintained its decision to assign violations. Furthermore, the March 21, 2017, letter claimed these multiple separate actions/violations charged against Plaintiff were not "adverse recommendations" and, therefore, the MEC alleged the Bylaws did not give Plaintiff the right to request a hearing on these actions.  Pursuant to the Bylaws and based on prevailing jurisprudence, these actions did in fact constitute adverse recommendations and the actions taken against Plaintiff as of that time constituted adverse actions. In violation of Plaintiff's constitutional and other rights, it was only later in the process that a hearing was conducted.  These actions and the Bylaws violated Plaintiff's due process rights because they denied Plaintiff the opportunity for a timely fair hearing and a fair opportunity to submit evidence proving the claimed violations untrue, which violations directly affect Plaintiff's ability to maintain privileges at TRMC and, as a result, Plaintiff's livelihood.

35.

During a meeting with the MEC on April 11, 2017, members of this committee acknowledged to Plaintiff that the MEC had never reviewed the actual medical charts, records or any of the other specific underlying facts or evidence purportedly establishing these Level

violations.  During this meeting, the MEC confirmed to Plaintiff that MEC had simply "rubber stamped" the synopsis and recommendations received from TRMC's administration.

36.

Had the MEC reviewed the evidence, its only non-arbitrary conclusion would have been that these Level III and IV cases initiated against Plaintiff (as a result of Stock and TRMC's improper and illegal motives) had absolutely no merit and were completely groundless. As amplified below, the evidence shows there is no legitimate basis for any of the Level III or Level IV purported violations by Plaintiff.  Yet, TRMC, the MEC and the Board failed and/or refused to consider this evidence.  Instead, Defendants engaged in a concerted effort to build an unfavorable record with respect to Plaintiff's performance as a physician in order to suspend, deny and/or refuse to renew Plaintiff's privileges at the Hospital.  To do so, TRMC can gain control of the local OB/GYN market and remove Plaintiff from competition in the OB/GYN field of medicine in the region.  These actions by the MEC, the Board, Greg Stock, and TRMC are violative of the Bylaws, the contractual agreements of the parties, and the laws of the United States of America and the State of Louisiana, including, but not limited to, Plaintiff's constitutionally guaranteed due process and equal protection rights.

37.

The HCQIA is a federal law pertaining to the tracking of various malpractice or adverse action occurrences.  In certain instances, it absolves peer-review panels like the MEC from liability concerning their review of charges of adverse action against a physician, so long as the panel reviews such action to further quality health care; makes a reasonable effort to gather the facts; provides adequate notice and hearing procedures to the physician involved; and reasonably believes the action is warranted by the facts known after the facts are gathered and notice and

hearing have occurred.  This provides an outline for how Congress interprets the due process afforded a physician charged with violations such as Plaintiff here.  In this case, TRMC and its MEC, directly and through its Bylaws, have not followed the due process, equal protection and other requirements of the Constitution of the United States of America and outlined by the HCQIA.

38.

As noted above, after almost a decade of competent and productive practice at the Hospital, with no allegations or charges of any sanctionable violations, Defendants accused Plaintiff of multiple serious Level III and IV violations, as well as a separate allegation of unprofessional conduct, all within a matter of months.  Plaintiff's practice of medicine, treatment of patients and compliance with all standards of care and ethical duties has been, at a minimum, comparable to Plaintiff's previous exemplary treatment and compliance with professional ethical duties.

39.

Defendants have treated Plaintiff differently than other similarly situated physicians with privileges at TRMC, especially those physicians whom TRMC employs. Particularly, TRMC-employed OB/GYN physicians have not been subjected to the same processes of review, scrutiny, or assessment of performance, and have not been subjected to alleged Level violations for actions similar to those of Plaintiff.  Defendants' concerted effort in singling out Plaintiff and other physicians who have privileges at, but not employment through, TRMC for disciplinary action violates the pertinent contractual agreements and due process protections, among other state and

federal laws, and shows the true, improper and illegal, motive for Defendants' actions.

40.

Plaintiff established, both prior to and during the hearing which was eventually conducted, that Plaintiff should be fully exonerated from the adverse recommendations asserted by Defendants.

41.

By way of example, in Case No. 7954, Plaintiff was charged with a Level IV violation based on the following purported concerns by the Surgical Care Committee of the Hospital in this "GYN" case: 1) the timing of recognition of uretal injury; 2) the timing of the urology consult; and 3) the performance of open laparotomy to assess for urinary tract injury. The case was referred by TRMC to its chosen outside "independent reviewer," The National Peer Review Committee ("NPRC"), which disagreed with the Surgical Care Committee's charges and opined that Plaintiff's treatment did not deviate from the standards of care with respect to any of these concerns. Plaintiff's actions were also reviewed and Plaintiff was completely exonerated by a separate Medical Review Panel composed of three independent, expert OB/GYN physicians. At hearing, Plaintiff presented overwhelming evidence, including the opinions from Defendants' own expert and the Medical Review Panel, as well as an opinion from Plaintiff's expert, that there was no possible deviation from the standards of care. Incredibly, after NPRC found no Level violation whatsoever regarding these charges, and Plaintiff was exonerated by the three independent, expert OB/GYN physicians serving on the Medical Review Panel, TRMC did not retract the violation, but merely reduced the charge from a Level IV to a Level III, still a serious violation that TRMC can use to affect or revoke Plaintiff's staff privileges. The Hearing Panel and the Board improperly

"rubber stamped" this decision by the MEC.

42.

In Case No. 8969, Defendants alleged a Level IV violation by Plaintiff for allegedly not offering the patient a VBAC; telling the patient to push with a known breach presentation and delay in performing a C-section. During the hearing, even Defendants' own hired gun, agreed that a hospital-employed physician, and not Plaintiff, violated the standard of care by telling the patient to push even though this patient had a stable fetus in a non-emergency situation in a breach position. Defendants' own expert found it incredibly hard to believe that the TRMC-employed doctor was not charged with any violation of the standard of care. This blatantly evidences disparate treatment between Plaintiff and TRMC's own employed OB/GYN physicians. Plaintiff presented overwhelming evidence that there was no possible deviation by Plaintiff from the standard of care. Nevertheless, the Hearing Panel and the Board upheld the baseless charges leveled against Plaintiff, while not charging or disciplining the Hospital-employed physician, whose conduct actually severely deviated from and fell below the applicable standard of care.

43.

As to all of the five "trumped up" cases, Plaintiff presented a wealth of evidence, establishing beyond any reasonable dispute, that a sham review process was conducted, and which completely refuted all of the bogus charges against Plaintiff.

44.

The two example cases and charges described by Plaintiff above highlight the arbitrary, capricious, and even corrupt manner in which Defendants have been "file building" against Plaintiff with a goal to eliminate competition from a physician competitor who is not employed by the Hospital and does not create substantial referral business for other doctors employed by TRMC.

45.

Pursuant to the Bylaws, Plaintiff requested a fair hearing to review the decision of the Medical Executive Committee to recommend to the Board of TRMC the adverse actions, described above, relating to Plaintiff's clinical privileges in obstetrics and gynecology at the Hospital.  After briefing and erroneous rulings by the Hearing Officer on important issues, including burden of proof and evidentiary standards, addressed above, a hearing was conducted on April 24-26 and May 8, 2018.  On or about June 3, 2018, the Hearing Panel, with very minimal discussion, issued a Recommendation and Reasons completely and erroneously affirming every single one of the recommendations of the Medical Executive Committee, even with respect to recommendations which were completely adverse to the opinions of TRMC's own experts, on adverse actions impacting Plaintiff's clinical privileges at TRMC.  In doing so, the Hearing Panel affirmed the MEC's decision to recommend suspension of Plaintiff's clinical privileges in obstetrics, requiring Plaintiff to attend Continuing Medical Education hours and subject Plaintiff to "chart audit" of thirty (30) of Plaintiff's obstetrical and gynecological cases over the following twelve (12) months. These sanctions are purportedly based on the "totality of the circumstances," and limited conclusory statements made without any record citations.

46.

On or about June 18, 2018, Plaintiff timely submitted a Notice and Incorporated Memorandum of Appeal.  After briefing by both sides, oral statements and submission on August 6, 2018, the Board rendered a decision on August 13, 2018, completely affirming the adverse recommendations of the Hearing Panel in their entirety, with no discussion, specific reasons or record citations.  The filing of this Complaint follows this "Final Decision" from the Board completing the administrative proceedings.

47.

Upon information and belief and in a further effort to drive Plaintiff out of competition, and despite Plaintiff's privileges at TRMC, the Hospital has been intentionally reducing the revenue Plaintiff earns by engaging in improper and illegal "cherry-picking" referral of higher-paying, non-Medicare/Medicaid patients exclusively to hospital-employed physicians.  However, lower-paying referrals such as uninsured or Medicare/Medicaid patients are still sent to non-employee and on-call physicians, such as Plaintiff.  These actions are in violation of federal law, including Medicaid and Medicare rules, procedures and requirements.  In addition, these actions are in violation of the Hospital's own Bylaws and/or policies, rules and requirements.

48.

Further evidencing its pattern of illegal activity, unfair competition and complete disregard for established legal boundaries, including La. R.S. 46:1051, *et. seq.* and interpreting authorities, TRMC has repeatedly operated, and continues to operate, its Hospital Service District ("HSD") outside of the legal boundaries of its district.  By way of example, with full knowledge of the law, and against the request to cease these illegal activities, TRMC has operated and continues to operate and solicit business in St. Mary Parish, without permission from St. Mary's HSD.  By way of example:

- All Lafourche HSD employed athletic trainers illegally operating in the St. Mary Parish HSD represent themselves as Thibodaux Regional Medical Center employees, wear clothes that depict Thibodaux Regional Medical Center, use equipment that depicts Thibodaux Regional Medical Center, hold seminars and teach lectures depicting themselves as Thibodaux Regional Medical Center employees, promote Thibodaux Regional Medical Center, and advertise Thibodaux

Regional Medical Center throughout the St. Mary Parish HSD, continuing to do so even after being asked to discontinue operating in the St. Mary Parish HSD by a representative of the St. Mary Parish HSD Board of Commissioners, yet Thibodaux Regional Medical Center continues to illegally operate in the St. Mary Parish HSD knowingly and without permission.

- Thibodaux Regional Medical Center is well aware of the illegal nature of operating its HSD outside of the specified legal boundaries, as proven by its own legal action versus Terrebonne HSD and resulting decision by the trial court, which was affirmed by the Louisiana First Circuit Court of Appeal.  See *Hospital Service District Number 2 of the Parish of Lafourche v. Hospital Service District No. 1 of the Parish of Terrebonne,* 97-1792 (La. App. 1 Cir. 6/29/98), 716 So.2d 168.  In *Lafourche HSD v. Terrebonne HSD,* the Louisiana First Circuit affirmed the trial court's ruling that the ownership and operation of the Raceland Clinic by Terrebonne HSD was in violation of Louisiana law because Terrebonne HSD was operating outside of its territorial boundaries.  See also, *e.g.,* La. Atty. Gen. Op. No. 11-0262, January 30, 2012. (a hospital service district cannot expand beyond its boundaries into another district without an agreement between the districts).

49.

During calendar years 2006 through 2013, while on call at TRMC, Plaintiff received average annual referrals of 15 non-Medicaid/Medicare, insured patients versus 15 uninsured or Medicaid/Medicare ("uninsured") patients.  However, during calendar years 2013 - 2018, while on call, Plaintiff received referrals of 1 insured and 20 uninsured patients.

50.

Doctors in other medical specialties who have privileges at the Hospital, but who like Plaintiff are not employed by the Hospital, have likewise experienced dramatic changes in referrals of insured versus uninsured patients.  These practices violate several state and federal laws and constitute, *inter alia,* collusion, unfair trade practices, improper and prohibited referral methods, and insurance and Medicare/Medicaid fraud.  These actions by TRMC have caused, and will continue to cause, substantial damages to Plaintiff.

51.

TGO also employs an OB/GYN physician who like Plaintiff holds medical staff privileges and practices OB/GYN services at TRMC.  Like Plaintiff, TRMC is trying to force Plaintiff's OB/GYN employee out of practice at the Hospital and restrict or deny Plaintiff's OB/GYN employee staff physician privileges by initiating, or causing to be initiated, one or more baseless Level III charges/allegations against Plaintiff's OB/GYN employee and reducing higher-profit referrals to Plaintiff's OB/GYN employee while at TRMC.

## **COUNT I**

## **Violation of Sherman Act § 1, as amended, 15 U.S.C.A. § 1**

52.

Paragraphs 1 through 51 are hereby adopted and incorporated by reference.

53.

TRMC is the sole community provider of both inpatient and outpatient hospital services in Thibodaux, Louisiana.  As such, TRMC is an essential facility for the delivery of OB/GYN

services in the Parish of Lafourche.  These services are a lucrative business interest of TRMC.
TRMC possesses a dominant share of the OB/GYN market in the Thibodaux/Lafourche region.

54.

Reduction, restriction or elimination of physician privileges at TRMC for Plaintiff
privileges or other physicians employed by TGO has an unreasonable anti-competitive effect as it
decreases the supply of OB/GYNs in the region; it decreases the choice of doctors in the region
and will increase the price of OB/GYN services in the region.

55.

Specifically, TRMC has a dominant market share for OB/GYN services in the region and
**reducing competition** could make it the sole provider in the region for certain services, allowing
it to raise the prices it demands of public and non-public insurers as TRMC has done in the past.
Thus, Defendants have economic incentive to eliminate competition.

56.

TRMC, the MEC, the Credentials Committee, the Board of Commissioners, and Stock
have control over the decision making process to reduce, restrict, or eliminate Plaintiff's privileges.
They also have the ability to coerce and unduly influence that decision, **and they have done so**.

57.

Plaintiff does not have staff physician privileges at any tertiary level facility except TRMC.
Plaintiff's entire Obstetrical practice is based at TRMC and all of Plaintiff's Obstetrical privileges
are with TRMC.  The termination of Plaintiff's privileges at TRMC will cut off Plaintiff's access
to compete in the region's market, especially regarding Obstetrical services that must be performed
at a facility like TRMC.

58.

Defendants are acting in a concerted manner to restrain trade and commerce by seeking to effectively restrict, limit, and terminate Plaintiff's privileges at TRMC, which will have the effect of eliminating Plaintiff from the competitive OB/GYN market in the region.  In addition, TRMC is illegally operating outside of its designated HSD and illegally manipulating referrals of Medicare/Medicaid patients and non-medical patients, as amplified above.  These actions are so inimical to competition and so unjustified that they are conclusively presumed to be illegal, particularly as they were not done in the public interest but in Defendants' commercial interest.

59.

Defendants' illegal actions are injuring not only the community, but also Plaintiff, as Plaintiff is being targeted for suspension, restriction or termination of privileges at TRMC and receiving only lower-revenue referrals at TRMC in an effort to "squeeze out" Plaintiff financially. If Defendants are permitted to carry out these illegal actions, Plaintiff will no longer able to practice Plaintiff's primary area of medicine in the community where Plaintiff has built an office and a home, and employs dozens of local staff.

60.

Because of the irreparable harm that Plaintiff will suffer if Plaintiff's privileges are suspended or terminated and because of the harm Plaintiff has suffered to date as described above, Plaintiff is entitled to injunctive relief, declaratory judgment and damages for the injuries caused by the Defendants and the damage being caused to Plaintiff's practice. Since Plaintiff has been advised of pending suspension, even in just the past few days, TRMC's employees are wildly spreading rumors and further irreparably damaging Plaintiff's reputation by discussing Plaintiff's suspension within hearing range of patients within the Hospital. Continued discussion and talk

amongst TRMC employees and staff about Plaintiff's suspension and rumors therein will continue to further irreparably harm to Plaintiff.  Without an injunction to allow Plaintiff to resume staff privileges, this irreparable harm will continue, damaging Plaintiff and those OB/GYN physicians and all staff associated with Plaintiff's medical practice, a direct competitor to TRMC's owned OB/GYN medical practice.

## COUNT II

## Violation of Sherman Act § 2, as amended, 15 U.S.C.A. § 2

61.

Paragraphs 1 through 60 are hereby adopted and incorporated herein by reference.

62.

TRMC is the sole community provider of both inpatient and outpatient hospital services in Thibodaux, Louisiana.  Other than Plaintiff's clinic, where Plaintiff cannot provide hospitalized obstetrical care, TRMC is also the sole provider of OB/GYN services in Thibodaux, Louisiana. TRMC possesses a dominant share of the OB/GYN market in the Thibodaux area, specifically, TRMC is believed to possess at least 75 percent of that market.

63.

TRMC's OB/GYN market power arises from its acquisition and control of the only competing OB/GYN practice to Plaintiff, which, combined with full TRMC resources results in costs advantages, price leadership, including pricing trends and practices, and homogeneity of services in the market.  TRMC controls entry into the Thibodaux OB/GYN market through its peer review and credentialing processes.

64.

TRMC, through its peer-review process, has acted without a valid business reason or concern for quality of service or efficiency in scheming to suspend and/or revoke Plaintiff's staff

privileges.  This is evidenced by the manner in which the MEC, of which Plaintiff's competitors were members, continued to review Plaintiff's cases, even after charging Plaintiff with serious violations and despite evidence (and an outside reviewer) showing the alleged violations were groundless.   Further, the "fair hearing" provided for in TRMC's Bylaws was conducted notwithstanding the complete failure to comply with constitutional protections, including, but not limited to, due process and equal protection, with no directive on burden of proof or evidentiary standards.

65.

Defendants' actions have caused and continue to cause injury to Plaintiff.  Plaintiff is no longer receiving referrals of any privately insured patients from TRMC employee physicians; Plaintiff's reputation has been and is being damaged; and, if Defendants are permitted to carry out their illegal scheme, Plaintiff will not be able to practice Plaintiff's primary area of medicine in the community where Plaintiff has built an office and a home and employs dozens of local staff.

66.

Plaintiff is entitled to injunctive relief, declaratory judgment and damages for the injuries caused and being caused by the Defendants and the damage caused to Plaintiff's practice.

## **COUNT III**

## **Breach of Contract**

67.

Paragraphs 1 through 66 are hereby adopted and incorporated herein by reference as if fully set forth herein.

68.

This is an action for past and future consequential and compensatory damages incurred by Plaintiff as a result of TRMC's breach of its contract as embodied in the Bylaws and related agreements between the parties.

69.

The Bylaws and related documents are a binding contractual obligation between TRMC and Plaintiff.  See, e.g., *Granger v. Christus Health Central Louisiana*, 2012-1892 (La. 6/28/13), 144 So.3d 736 2013. TRMC breached its obligations to Plaintiff, as set forth above in this Complaint, as well in the following manners: (1) by engaging in an illegal, concerted effort to suspend, restrict, modify, fail to renew and/or terminate Plaintiff's medical staff and clinical privileges at the Hospital; (2) by failing to comply with due process and equal protection requirements such as failing to give Plaintiff a fair hearing; (3) by failing to follow TRMC's Bylaws in bringing adverse actions against Plaintiffs without procedures described in the Bylaws; (4) by fabricating Level III and IV violations and allegations of professional breaches for Defendants' own financial gain; (5) by failing to review or consider the overwhelming and dispositive evidence, and opinions from third party reviewers, exonerating Plaintiff; (6) by treating Plaintiff differently than other similarly situated Hospital-employed physicians; (7) by illegally diverting or failing and refusing to refer insured patients to Plaintiff; (8) by manipulating referrals of Medicare/Medicaid patients; (9) by illegally soliciting and operating outside of its designated hospital service district; and (10) other and further breaches to be established at trial.

70.

The foregoing breaches of TRMC's contractual obligations to Plaintiff have caused Plaintiff and will continue to cause Plaintiff to suffer loss of professional standing and significant

loss of earning capacity and income, including future income, irreparable damage to Plaintiff's reputation, and general damages.

## COUNT IV

### Bad Faith Breach of Contract

71.

Paragraphs 1 through 70 are hereby adopted and incorporated fully as set forth herein.

72.

This is an action for general damages including mental anguish, humiliation and embarrassment directly resulting from bad faith and intentional breach of contract by Defendants in contravention of the duty of good faith imposed upon contractual relationships under Louisiana Civil Code Article 1997.

73.

TRMC's bad faith breach of contract resulted directly from the interference and involvement of Stock, the MEC (including those who are competitors of Plaintiff), the Credentials Committee, the Board of Commissioners, and other employees and agents of TRMC in a conscious effort to restrict and eliminate Plaintiff from competition in the OB/GYN market in the Thibodaux area. Each of the punitive actions initiated by Defendants follow closely.

74.

Defendants' unjustified interference with Plaintiff's staff privileges at TRMC constitutes an intentional bad faith breach of TRMC's contractual obligations, which have caused pecuniary and non-pecuniary damages to Plaintiff in the form of embarrassment, mental anguish, and humiliation, as well as continuing damage to Plaintiff's professional reputation. Defendants are

liable to Plaintiff, for pecuniary, compensatory, and general damages for the bad faith breach of contract caused by Defendants in their efforts to eliminate Plaintiff from competition in the area.

## COUNT V

### Tortious Interference with Contract

75.

Paragraphs 1 through 74 are hereby adopted and incorporated herein by reference as if fully set forth herein.

76.

The Bylaws are a binding contractual obligation between TRMC and Plaintiff.  TRMC, Stock as CEO of TRMC, the MEC, the Credentials Committee, and the Board were aware of that binding contractual obligation.

77.

Defendants' actions, as set forth in this Complaint, constitute a deliberate interference with the contract between Plaintiff and TRMC, particularly concerning the medical staff and clinical privileges given to Plaintiff pursuant to that contract.  The bad faith actions undertaken by these parties were intended to and had the effect of causing TRMC to wrongfully breach its contractual obligations regarding medical staff privileges.  Accordingly, these parties are liable to Plaintiff for compensatory and general damages as a result of their intentional and bad faith inducement of TRMC to breach its contractual obligations to Plaintiff by seeking to "file build" on Plaintiff in a concerted effort to restrict, suspend, limit, fail to renew and/or terminate Plaintiff's privileges without basis, justification, cause or due process.

**COUNT VI AND VII**

**Abuse of Rights and Misrepresentation**

78.

Paragraphs 1 through 77 are hereby adopted and incorporated herein by reference as if fully set forth herein.

79.

This is an action for damage for mental anguish, humiliation, embarrassment, loss of professional reputation and loss of income for Defendants' intentional abuse of rights.

80.

Defendants' bad faith actions referred to in this Complaint constitute an abuse of rights because the above named Defendants have intentionally manipulated and continue to manipulate the professional review proceedings in order to harass and damage Plaintiffs' reputation and earning capacity and to eliminate Plaintiff from competition in the OB/GYN market in the Thibodaux area. The actions of the Defendants, their agents and employees, were undertaken without a legitimate motivation or basis and not for the purpose of assuring Plaintiff performed within the appropriate professional standards of care. Rather, through their misrepresentations, Defendants, their agents and employees, manipulated the members of the professional review process in a bad faith effort to eliminate Plaintiff from competition. Defendants effectively took over the peer review process, which was fatally flawed as set forth above, and transformed those proceedings into an inquisition designed solely to remove Plaintiff from competition with TRMC. Alternatively, or in addition, one or more of the Defendants have made negligent misrepresentations, causing harm and damages to Plaintiff. As such, Defendants' actions constitute an abuse of rights and misrepresentation under Louisiana law.

## COUNT VIII

### Intentional Infliction of Emotional Distress and Defamation

81.

Paragraphs 1 through 80 are hereby adopted and incorporated herein by reference as if fully set forth herein.

82.

This is an action for general damages for infliction of mental anguish, loss of professional reputation, embarrassment and severe emotional distress against Defendants, in their individual capacities and as officers, employees and agents of TRMC.

83.

Defendants and their agents and employees engaged in a pattern of deliberate and repeated acts of harassment of an extreme and outrageous nature that were intended to and did cause Plaintiff severe emotional distress.  The repeated actions of the Defendants, which were ratified by TRMC, were intended to demean, harass and eventually deprive Plaintiff of Plaintiff's staff privileges and standing in the medical community.  Such actions constitute a continuing tort because they have continued unabated from approximately December, 2014 to the present. Repeated acts of harassment directed toward Plaintiff have permeated the professional review process and caused serious general damages to Plaintiff, as well as damage to Plaintiff's reputation and standing.  Furthermore, Defendants have defamed Plaintiff as a result of levelling untrue and unfounded charges against Plaintiff, causing Plaintiff general damages and damages to Plaintiff's good personal and professional reputation and good standing in the Thibodaux community.

## COUNT IX

### Violation of the LUTPCPL – La. R.S. 51:1405, *et seq.*

84.

Paragraphs 1 through 83 are hereby adopted and incorporated herein by reference as if fully set forth herein.

85.

This action is an action for damages and attorney's fees arising from the violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. § 51:1405, *et seq.* ("LUTPCPL") against Defendants.

86.

Plaintiff possesses a right of action and a cause of action under the LUTPCPL against Defendants because Plaintiff is both a competitor and consumer of the OB/GYN services offered by TRMC and has suffered a significant economic loss and damages to Plaintiff's professional reputation as a result of the wrongful acts of Defendants as set forth in this Complaint.

87.

Defendants have engaged in and continue to engage in practices against Plaintiff that seek to restrict or monopolize the competition in the OB/GYN market in the Thibodaux, Louisiana area. The actions of Defendants offend public policy and are unethical, oppressive, unscrupulous, and illegal as well as substantially injurious to Plaintiff and the community at large.

88.

Among other actions, Defendants have engaged in an ongoing course of manipulation of the professional review process at TRMC in order to restrict and deny Plaintiff medical staff and clinical privileges and Plaintiff's ability to practice medicine in the region.  Defendants have made

repeated misrepresentations concerning Plaintiff to TRMC's professional review committee and others and have wrongfully deprived Plaintiff and are seeking to further wrongfully deprive Plaintiff of Plaintiff's right to use the services of TRMC.  Moreover, Defendants have attempted to eliminate Plaintiff as a competitor by manipulating referrals of Medicare/Medicaid patients, operating outside of their designated hospital service district and making false and malicious statements concerning Plaintiff's professional competence through the medical community in an effort to eliminate Plaintiff as a competitor.

## COUNT X

### Violations of Plaintiff's Due Process and Equal Protection Rights

89.

Paragraphs 1 through 88 are hereby adopted and incorporated herein by reference as if fully set forth herein.

90.

The Fourteenth Amendment of the United States Constitution prevents any state taking of property without due process, and 42 U.S.C. § 1983 permits a civil action for any such violation.

91.

Physician privileges are considered property as defined in the Constitutions of the State of Louisiana and the United States of America.

92.

TRMC is a state actor in that it is a public entity and political subdivision of the State of Louisiana.  All other Defendants are agents or divisions of TRMC.

93.

Defendants' actions as described in this Complaint include, *inter alia,* reducing the amount of income earned by Plaintiff while exercising Plaintiff's privileges at TRMC through abuse of

referrals at TRMC and including fabricating numerous violations against Plaintiff that may be used to restrict or eliminate Plaintiff's privileges at TRMC.  As a result, Defendants have already significantly reduced the value of Plaintiff's property interest in Plaintiff's privileges at TRMC, and if Defendants succeed in their scheme, Defendants will fully and irreparably destroy Plaintiff's constitutional property interest in Plaintiff's privileges at TRMC.

94.

Further, Defendants' procedure in recommending, reviewing, and assigning these trumped up charges against Plaintiff were all done without due process and without following the requirements of the HCQIA (and in some instances, TRMC's own Bylaws).  As a result, Defendants have taken and seek to fully take Plaintiff's constitutionally protected property interests without the due process required by the United States Constitution or the HCQIA. Moreover, TRMC's Bylaws are fatally defective because they are silent as to burden of proof and evidentiary standards to be utilized in the "fair hearing."  This fatal defect resulted in a hearing which clearly violated constitutional protections and all notions of fundamental fairness, including due process and equal protection.

95.

Defendants are liable to Plaintiff for the damages Plaintiff has sustained to date for Defendants' taking of Plaintiff's property without due process of law, violation of equal protection mandates and any further taking Defendants might accomplish.

96.

Because of the irreparable harm that Plaintiff and the community at large will suffer if Defendants are successful in fully revoking Plaintiff's privileges at TRMC without due process, Defendants should be enjoined from any further reporting, reviewing, and assigning any further

violations against Plaintiff and/or restricting or revoking Plaintiff's privileges without the due process and equal protection required by law—which requirements Plaintiff requests the Court spell out in its order.

**WHEREFORE,** Plaintiff Doctor prays that after due proceedings have been had the Court enter judgment against Defendants awarding Plaintiff:

1) Preliminary and Permanent Injunctive Relief against TRMC and the other Defendants from adversely impacting, or endeavoring to adversely impact, suspending, revoking or terminating Plaintiff's clinical or medical staff privileges at TRMC and from further proceeding with the prosecution or entry of any actions, charges or decisions which adversely affect Plaintiff's clinical or medical staff privileges at TRMC, or reporting any of the pending charges/allegations of violations, or any rulings or decisions relating to any such charges or allegations of violations by Plaintiff, or any other of Defendants' improperly initiated actions, or resulting decisions, against Plaintiff to the National Practitioners Data Bank or any other entity or person;

2) Additional injunctive relief ordering TRMC to fully reinstate Plaintiff's medical staff and clinical privileges and to remove from its records and destroy all documents relating to the Level charges and adverse actions against Plaintiff, and ordering Defendants to fully comply with all state and federal laws, including insurance contracts, laws and regulations with respect to patient referrals, and operation within its designated service district;

3) A judgment declaring that TRMC has violated the law and Plaintiff's rights and that TRMC's Level and professional charges/allegations and any resulting suspension or

other adverse action against Plaintiff are withdrawn and declared revoked, null and void and of no force and effect and that Plaintiff's privileges are fully reinstated;

4) Actual, consequential, general and compensatory damages, including damages for lost income, past and future, treble damages, against Defendants, jointly, severally and in solido, for intentional infliction of emotional distress, violation of the LUTPCPL, the Sherman Act, breach of contract, misrepresentation, tortious interference with contract, bad faith breach of contract, violation of constitutional rights, defamation and abuse of rights and damage to reputation/standing;

5) General and compensatory damages permitted under Louisiana law against Defendants for tortious interference with contract;

6) Lost income, actual, consequential, general and compensatory and treble damages relating to Defendants' violations and illegal actions with respect to patient referrals;

7) Reasonable costs and attorney's fees for instituting and maintaining this action; and

8) All other legal and equitable relief as this court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury for all issues so triable.

Respectfully submitted:

By: *Michael R. C. Riess*
_____
    Michael R. C. Riess (#2073)
    Thomas P. Henican (#19292)
    **RIESS LEMIEUX, L.L.C.**
    201 St. Charles Avenue, Suite 3300
    New Orleans, Louisiana 70170
    Telephone:  (504) 581-3300
    Facsimile:  (504) 581-3310
    E-mail:  mriess@rllaw.com
    E-mail:  thenican@rllaw.com

    *And*

    Christopher H. Riviere (#11297)
    Todd M. Magee (#35415)
    **LAW OFFICE OF CHRISTOPHER H.**
    **RIVIERE**
    **A Professional Law Corporation**
    McCulla House
    103 West Third Street
    Thibodaux, Louisiana  70301
    Telephone:  (985) 447-7440
    Facsimile:  (985) 447-3233
    E-mail:  criviere@rivierelaw.com
    E-mail:  tmagee@rivierelaw.com

    ***Attorneys for Plaintiff Doctor***