# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NATCHEZ J. MORICE, III, M.D. | |
| VERSUS | CIVIL ACTION NO. 2:18-cv-07945 |
| HOSPITAL SERVICE DISTRICT NO. 3 PARISH OF LAFOURCHE D/B/A THIBODAUX REGIONAL MEDICAL CENTER; THE BOARD OF COMMISSIONERS OF THIBODAUX REGIONAL MEDICAL CENTER; THE MEDICAL EXECUTIVE COMMITTEE OF THE MEDICAL STAFF OF THIBODAUX REGIONAL MEDICAL CENTER; THE CREDENTIALS COMMITTEE OF TRMC AND GREG STOCK, CHIEF EXECUTIVE OFFICER OF THIBODAUX REGIONAL MEDICAL CENTER | SECTION M          DIVISION 3 JUDGE BARRY W. ASHE MAG. JUDGE DANIEL E. KNOWLES *JURY TRIAL DEMANDED* |

## VERIFIED FIRST SUPPLEMENTAL AND AMENDING COMPLAINT FOR TEMPORARY RESTRAINING ORDER, INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND DAMAGES, INCLUDING DEMAND FOR JURY TRIAL

Natchez J. Morice, III, M.D., ("Plaintiff" or "Dr. Morice"), referred to as Plaintiff Doctor in the original Complaint For Injunctive Relief, Declaratory Judgment and Damages, Including Demand For Jury Trial ("Original Complaint"), hereby supplements and amends his Original Complaint[1], to read as follows:

Dr. Morice brings this action against Hospital Service District No. 3 Parish of Lafourche d/b/a Thibodaux Regional Medical Center ("TRMC," "the Hospital, " or "Lafourche HSD"); the

---

[1] In accordance with the Court's January 29, 2019 Order and Reasons (Rec. Doc. 52), in addition, Plaintiff amends the caption of this case, as set forth above.

Medical Executive Committee of TRMC ("the MEC"); the Board of Commissioners of TRMC ("the Board"); the Credentials Committee of TRMC ("the Credentials Committee"); and Greg Stock[2], the Chief Executive Officer of TRMC (collectively, "Defendants"), and alleges upon personal knowledge as follows:

## JURISDICTION AND VENUE

### 1.

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the constitution or laws of the United States.  Additionally, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims, as these federal and state claims form part of the same Article III case or controversy.

### 2.

Venue is proper in the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this judicial district and substantially all of the events or omissions giving rise to these claims occurred in this judicial district.

## PARTIES

### 3.

Plaintiff is a person of the full age of majority, domiciled in the Parish of St. Mary, however by profession conducting the practice of medicine substantially in the Parish of Lafourche, State of Louisiana.

---

[2] TRMC, the MEC, the Board, the Credentials Committee and Greg Stock are collectively referred to herein as "Defendants."

4.

Made defendant herein is Hospital Service District No. 3 of the Parish of Lafourche d/b/a Thibodaux Regional Medical Center, a hospital service district, as such a public entity serving a political subdivision, which owns and operates Thibodaux Regional Medical Center in the Parish of Lafourche, State of Louisiana.

5.

Made defendant herein is the Board of Commissioners of TRMC ("the Board" or "Board of Commissioners"), which acts and has acted, in connection with the events described herein, as the governing body of TRMC.  At all times pertinent hereto, the Board is operating and doing business within the Parish of Lafourche, State of Louisiana.

6.

Made defendant herein is the Medical Executive Committee of the Medical Staff of TRMC ("the MEC"), an independently organized association of Medical Staff of TRMC, which at all times acted and was actually doing business within the Parish of Lafourche, State of Louisiana.

7.

Made defendant herein is the Credentials Committee of TRMC, which at all times pertinent hereto was operating and doing business in the Parish of Lafourche, State of Louisiana.

8.

Made defendant herein is Greg Stock ("Stock"), individually, and in his capacity as Chief Executive Officer and as agent and officer of TRMC, who is a person of the full age of majority and domiciled in the Parish of Lafourche, State of Louisiana.

## BACKGROUND FACTS

9.

To introduce and summarize this Complaint: TRMC has schemed and acted to remove Plaintiff from competition in the regional market. This will financially benefit TRMC. Dr. Morice has had full Obstetrics and Gynecology staff privileges at TRMC for over 12 years, since 2006; Plaintiff also operates a separate practice outside of TRMC. It is common in the medical industry for physicians with their own independent practice to also have privileges at a hospital for a number of reasons, including generating revenue for the hospital and better serving the medical needs of the region's citizens. TRMC and its employee physicians have recently all but eliminated more profitable referrals (i.e., non-Medicare/Medicaid referrals) to Dr. Morice and similarly situated physician groups. For the first time in Plaintiff's ten years plus of admission at TRMC, Stock, TRMC, and the MEC began to cite Dr. Morice for fabricated, untrue violations. TRMC and the Credentials Committee have used those trumped-up violations to suspend Plaintiff's privileges at TRMC and to otherwise deny any effort by Dr. Morice to renew those privileges (a procedure that is ordinarily required every two years). Thus, Defendants will be able to control the referrals made by doctors practicing at TRMC (whether as employees or by outside doctors with staff privileges) to restrict competition in the regional market.

10.

By way of background, Plaintiff was born in the New Orleans area. He has a Bachelor of Arts degree, with a major in biology and minors in chemistry and psychology, from the University of New Orleans. Dr. Morice also earned a Masters of Business Administration from Tulane University. He received medical training and Doctor of Medicine degree from Louisiana State University Medical School in New Orleans. Plaintiff is currently earning a Master's in Healthcare.

11.

After medical school, Plaintiff completed a residency in Obstetrics and Gynecology ("OB/GYN") at West Virginia University in Morgantown, West Virginia. There, he was elected by the faculty to serve as the Administrative Chief Resident.

12.

Since completing an OB/GYN residency, Plaintiff has, since 2003, actively practiced medicine in the State of Louisiana, primarily as an OB/GYN physician. He is licensed and is in good standing with the Louisiana State Board of Medical Examiners. Dr. Morice has been board certified in obstetrics and gynecology by the American Board of Obstetrics and Gynecology (ABOG) since 2006. Plaintiff has maintained certification each year, as required by ABOG, as a board certified Obstetrician and Gynecologist through yearly Maintenance of Certification (MOC) procedures. Each year Dr. Morice has achieved academic excellence during the MOC process, participating in the ABOG trial of exemption for academic excellence. Plaintiff has been recognized for academic excellence in the field of Obstetrics and Gynecology by the ABOG.

13.

Dr. Morice is well-credentialed and respected in the field of OB/GYN, which attributes benefit to the patients he serves. Plaintiff is certified by the American Board of Obstetrics and Gynecology. He is a Fellow and a Diplomat of the American College of Obstetrics and Gynecology. Plaintiff is a member of the International Continence Society, the American Association of Gynecologic Laparoscopists, the International Euro Gynecological Association, the Minimally Invasive Robotics Association, the National Vulvodynia Association, the American Medical Association, the Saint Mary Medical Association and the Louisiana Medical Association.

14.

Dr. Morice has been a Chairman of the Hospital Service District in St. Mary Parish in the past and is currently Vice Chairman. He has been a Chairman of various obstetrics and pediatric panels at Teche Regional Center ("Teche"), located in Morgan City, Louisiana, and served various other roles at the hospital, including on the Medical Executive Committee. Plaintiff has been an associate professor at Tulane University in the OB/GYN department for the past six plus years.

15.

After practicing medicine in Morgan City, with privileges at Teche, for approximately three years beginning in 2003, in May 2006, Plaintiff became an active member of the medical staff (with full privileges) at TRMC. As he rapidly grew the Thibodaux practice, he opened an office in Thibodaux, Louisiana in 2012.

16.

From 2006 until 2013, while the only other group competitor to Plaintiff was an independently-owned OB/GYN group, and TRMC did not own and operate any competing OB/GYN medical practice, his privileges at TRMC have allowed him to perform thousands of OB/GYN procedures including deliveries and other critical, invasive procedures that are vitally important to the community. These procedures also constitute a large proportion of Plaintiff's practice.

17.

Dr. Morice's privileges, which by law form a contract between Plaintiff and TRMC and a Constitutional property right in his favor, were granted to Plaintiff by TRMC after the Hospital reviewed, investigated, and approved his application for privileges.

18.

TRMC's Medical Staff By-Laws ("Bylaws") require a staff physician to apply for renewal of privileges at TRMC every two years, including reporting on any facts that might be detrimental to TRMC's renewal of a physician's privileges, specifically including certain violations.

19.

Since first gaining privileges at TRMC in 2006, and through 2016, Plaintiff has applied for renewal of privileges every two years and TRMC granted every such application. In connection with these five separate reviews and renewals of Dr. Morice's privileges, no one associated with TRMC's privileges' renewal process raised any issues with respect to Plaintiff's competency, proper treatment of patients, or compliance with all professional and/or ethical duties as a physician.

20.

Likewise, for almost nine years since TRMC approved Dr. Morice's privileges in 2006, no one at TRMC made any allegations of violations against Plaintiff and he was not cited for any violations at TRMC. However, this has recently changed drastically. During that time between 2006 and 2013, Dr. Morice's practice grew dramatically, which impacted TRMC's market share of all ancillary services as Plaintiff was performing all ancillary services within his own medical practice rather than sending these services to TRMC. As Plaintiff's practice outside of TRMC grew, TRMC purchased the Thibodaux Women's Center, his only competitor in the market for OB/GYN services and subsequently has employed and controlled their own OB/GYN physicians in-house. After purchasing Dr. Morice's only significant outside competitor in 2014, which greatly increased the competition between Plaintiff and TRMC, the Hospital began citing him for numerous bogus violations to potentially restrict, suspend or remove his privileges at TRMC,

Page 7

reduce competition in the region, and raise the price TRMC charges its patients and insurers, both private and public.

21.

In the Parish of Lafourche, Plaintiff owns Thibodaux Gynecology and Obstetrics, LLC ("TGO"), a Louisiana limited liability company that employs OB/GYN physicians (including Plaintiff), nurse practitioners, nursing staff, administrative staff, laboratory staff, custodial staff, and various other staff important to operations of this Lafourche Parish medical practice.

22.

TGO and the OB/GYN physicians employed by TGO are direct financial competitors with TRMC, including TRMC's own OB/GYN group.

23.

Specifically, Plaintiff and TGO commercially compete with TRMC's own staff of a least seven OB/GYN physicians. TRMC earns revenue from the services provided by its own OB/GYN physicians. Moreover, TRMC financially benefits from referrals made by its own doctors for other medical and related services that are provided. Therefore, TRMC has a substantial financial motivation for forcing out, restricting, and/or denying medical staff privileges to independent non-employee physicians.

24.

TRMC is the sole community provider of inpatient and outpatient hospital services in Thibodaux, Louisiana. TRMC is a public hospital, organized to serve a Hospital Service District, as defined in LSA-RS 46:1051, *et. seq,* making TRMC a public entity and a political subdivision of the State of Louisiana.

25.

TRMC is a licensed full service acute-care hospital whose services include OB/GYN services such as delivery-related and other invasive procedures, to patients in Lafourche Parish, including the Thibodaux area.

26.

TRMC is governed by its Board of Commissioners, whose members are appointed by the Lafourche Parish Council. The Board's actions are governed by state law and the governing documents of TRMC. The Board's functions include determining, as a final internal authority at the hospital, the membership and privileges of its medical staff.

27.

TRMC's Bylaws designate a Medical Executive Committee (MEC) to act as the governing body of the TRMC Medical Staff. The MEC is elected by its Medical Staff and consists of the officers of the Medical Staff and two (2) members at-large elected by the Medical Staff.

28.

As defined by the Bylaws, the MEC's responsibilities include reviewing physician credentials and clinical competence as well as making recommendations for appointment, reappointment, delineation and removal of clinical privileges to the Board.

29.

The MEC is supposed to be independent and made of members who are not in competition with the physician who is being reviewed by the MEC. However, TRMC's MEC that has reviewed charges brought against Dr. Morice by TRMC has members who are competitors to Plaintiff, making the MEC naturally biased and not independent.

30.

Greg Stock is the CEO of TRMC.  Stock is an employee of TRMC.  As CEO of TRMC, Stock reports directly to the Board and, while he does not vote, he participates in and influences the Board's discussions including those pertaining to medical staff privileges.   Stock also participates in other TRMC committees, including but not limited to, the MEC.

31.

In approximately 2013, TRMC purchased an outside OB/GYN medical practice located within the service district staffed by an OB/GYN group of at least seven (7) physicians (referred to herein as "Thibodaux Women's Center" or "the Women's Center").  These physicians help TRMC to directly compete with doctors like Plaintiff and TGO.  Until TRMC gained ownership and control of Thibodaux Women's Center, Dr. Morice had a completely clean record at TRMC, never having a single variance or a single significant problem at the Hospital whatsoever.  During that time period, Plaintiff produced substantial revenue for TRMC, while he and the Hospital were in competition with the Women's Center.  Dr. Morice's relationship with TRMC changed dramatically after the Hospital purchased the Women's Center.  Incredibly, in the twenty-five months between December 10, 2014 and January 5, 2017, after TRMC gained ownership and control of Plaintiff's sole outside competition, he was charged with **five** level 3 or 4 violations, although Dr. Morice continued to practice medicine with the exact same high standards and level of care which he had always displayed.  Stated differently, in nine years of practice with full privileges at TRMC, Dr. Morice received no write-ups of any significance at all, but after the Hospital gained ownership and control of the Women's Center with which Plaintiff directly competed, he received five charges of serious violations within a period of about two years.

32.

Since the time it developed its own OB/GYN group, TRMC has been trying to remove Plaintiff and TGO from competition. By way of background, physicians employed by TRMC are paid a salary, based on a scale. The monies which they generate beyond their salaries, particularly for ancillary services, go to TRMC. In contrast, as a private OB/GYN doctor, most of Dr. Morice's revenue comes from ancillary services that he provides to patients, including testing, laboratory, radiology, ultrasound and other services. If TRMC is allowed to improperly, and based on false allegations, drive Plaintiff out of business and competition with TRMC, the Hospital will have a monopoly or near monopoly and be able to drive up the prices which it charges patients, insurers, the State of Louisiana and the United States for treatment and ancillary services.

33.

TRMC's Bylaws establish a peer review process, which is supposed to comply with certain procedures outlined in the Health Care Quality Improvement Act of 1986 (the "HCQIA") 42 U.S.C. § 11101 *et seq*. These elements include fundamental "due process" requirements of notice and the right to a <u>fair</u> hearing, including specifically delineated burdens of proof and evidentiary standards. These fundamental rights and standards apply any time a licensed healthcare practitioner is at risk that medical staff privileges would be "adversely affected." If a physician receives a notice of an "adverse recommendation," the Bylaws also entitle that physician to request a fair and impartial appellate review by the Hospital's Board of Commissioners. ("Adverse Recommendation" is defined by the Bylaws as "a recommendation to deny, restrict, reduce, modify, curtail, suspend, revoke, censure, reprimand, place on probation or fail to renew clinical privileges or appointment in the medical center or other health care entity for a reason related to professional competence or professional conduct.") Critically, in its Bylaws, TRMC completely

fails to include any statement or directive on burden of proof, order of presentation or applicable evidentiary standard with respect to the "fair hearing" provided for in the Bylaws. This failure clearly violates Plaintiff's equal protection, due process and other constitutional protections, in addition to all notions of fundamental fairness of the hearing process. Such a blatant disregard of core constitutional protections creates a situation in which hearing officers in different cases involving TRMC may impose completely different burdens of proof or evidentiary standards yielding disparate results.

34.

On March 21, 2017, Dr. David Elias, the Chief of Staff of TRMC's MEC sent Plaintiff a letter describing MEC's decision to maintain the levels of violation in three cases initiated by TRMC against him. MEC reported these violations to the Credentials Committee, which is the committee in charge of privileges. MEC approved these violation recommendations, even though they are unsupported by evidence, and in fact, are disproved by dispositive evidence showing Plaintiff acted properly and within prevailing standards of care. In the same correspondence, Dr. Elias revealed that the MEC was bringing five separate actions against Dr. Morice. These charges are likewise groundless and directly contrary to documentary and other evidence, including patient charts and other medical records that prove the allegations false. In fact, as amplified below, an outside reviewer chosen by TRMC recommended full exoneration of Plaintiff regarding one of those charges, yet the MEC maintained its decision to assign violations. Furthermore, the March 21, 2017, letter claimed these multiple separate actions/violations charged against Plaintiff were not "adverse recommendations" and, therefore, the MEC alleged the Bylaws did not give him the right to request a hearing on these actions. Pursuant to the Bylaws and based on prevailing jurisprudence, these actions did in fact constitute adverse recommendations and the actions taken

against Plaintiff as of that time constituted adverse actions. In violation of Plaintiff's constitutional and other rights, it was only later in the process that a hearing was conducted. These actions and the Bylaws violated Plaintiff's due process rights because they denied him the opportunity for a timely fair hearing and a fair opportunity to submit evidence proving the claimed violations untrue, which violations directly affect his ability to maintain privileges at TRMC and, as a result, Plaintiff's livelihood.

35.

During a meeting with the MEC on April 11, 2017, members of this committee acknowledged to Plaintiff that the MEC had never reviewed the actual medical charts, records or any of the other specific underlying facts or evidence purportedly establishing these Level violations. During this meeting, the MEC confirmed to Plaintiff that MEC had simply "rubber stamped" the synopsis and recommendations received from TRMC's administration.

36.

Had the MEC reviewed the evidence, its only non-arbitrary conclusion would have been that these Level III and IV cases initiated against Plaintiff (as a result of Stock and TRMC's improper and illegal motives) had absolutely no merit and were completely groundless. As amplified below, the evidence shows there is no legitimate basis for any of the Level III or Level IV purported violations by Dr. Morice. Yet, TRMC, the MEC and the Board failed and/or refused to consider this evidence. Instead, Defendants engaged in a concerted effort to build an unfavorable record with respect to Plaintiff's performance as a physician in order to suspend, deny and/or refuse to renew his privileges at the Hospital. To do so, TRMC can gain control of the local OB/GYN market and remove Plaintiff from competition in the OB/GYN field of medicine in the region. These actions by the MEC, the Board, Greg Stock, and TRMC are violative of the Bylaws,

Page 13

the contractual agreements of the parties, and the laws of the United States of America and the State of Louisiana, including, but not limited to, Plaintiff's constitutionally guaranteed due process and equal protection rights.

37.

The HCQIA is a federal law pertaining to the tracking of various malpractice or adverse action occurrences. In certain instances, it absolves peer-review panels like the MEC from liability concerning their review of charges of adverse action against a physician, so long as the panel reviews such action to further quality health care; makes a reasonable effort to gather the facts; provides adequate notice and hearing procedures to the physician involved; and reasonably believes the action is warranted by the facts known after the facts are gathered and notice and hearing have occurred. This provides an outline for how Congress interprets the due process afforded a physician charged with violations such as Plaintiff here. In this case, TRMC and its MEC, directly and through its Bylaws, have not followed the due process, equal protection and other requirements of the Constitution of the United States of America and outlined by the HCQIA.

38.

As noted above, after almost a decade of competent and productive practice at the Hospital, with no allegations or charges of any sanctionable violations, Defendants accused Plaintiff of multiple serious Level III and IV violations, as well as a separate allegation of unprofessional conduct, all within a matter of months. Plaintiff's practice of medicine, treatment of patients and compliance with all standards of care and ethical duties has been, at a minimum, comparable to his previous exemplary treatment and compliance with professional ethical duties.

39.

Defendants have treated Plaintiff differently than other similarly situated physicians with

privileges at TRMC, especially those physicians whom TRMC employs. Particularly, TRMC-employed OB/GYN physicians have not been subjected to the same processes of review, scrutiny, or assessment of performance, and have not been subjected to alleged Level violations for actions similar to those of Plaintiff. Defendants' concerted effort in singling out Plaintiff and other physicians who have privileges at, but not employment through, TRMC for disciplinary action violates the pertinent contractual agreements and due process protections, among other state and federal laws, and shows the true, improper and illegal, motive for Defendants' actions.

40.

Plaintiff established, both prior to and during the hearing which was eventually conducted, that he should be fully exonerated from the adverse recommendations asserted by Defendants.

41.

By way of example, in Case No. 7954, Plaintiff was charged with a Level IV violation based on the following purported concerns by the Surgical Care Committee of the Hospital in this "GYN" case: 1) the timing of recognition of uretal injury; 2) the timing of the urology consult; and 3) the performance of open laparotomy to assess for urinary tract injury. The case was referred by TRMC to its chosen outside "independent reviewer," The National Peer Review Committee ("NPRC"), which disagreed with the Surgical Care Committee's charges and opined that Plaintiff's treatment did not deviate from the standards of care with respect to any of these concerns. Plaintiff's actions were also reviewed and he was completely exonerated by a separate Medical Review Panel composed of three independent, expert OB/GYN physicians. At hearing, Dr. Morice presented overwhelming evidence, including the opinions from Defendants' own expert and the Medical Review Panel, as well as an opinion from Plaintiff's expert, that there was no possible deviation from the standards of care. Incredibly, after NPRC found no Level violation

whatsoever regarding these charges, and Plaintiff was exonerated by the three independent, expert OB/GYN physicians serving on the Medical Review Panel, TRMC did not retract the violation, but merely reduced the charge from a Level IV to a Level III, still a serious violation that TRMC can use to affect or revoke his staff privileges. The Hearing Panel and the Board improperly "rubber stamped" this decision by the MEC.

42.

In Case No. 8969, Defendants alleged a Level IV violation by Plaintiff for allegedly not offering the patient a VBAC; telling the patient to push with a known breach presentation and delay in performing a C-section. During the hearing, even Defendants' own hired gun, agreed that a hospital-employed physician, and not Dr. Morice, violated the standard of care by telling the patient to push even though this patient had a stable fetus in a non-emergency situation in a breach position. Defendants' own expert found it incredibly hard to believe that the TRMC-employed doctor was not charged with any violation of the standard of care. This blatantly evidences disparate treatment between Plaintiff and TRMC's own employed OB/GYN physicians. Plaintiff presented overwhelming evidence that there was no possible deviation by him from the standard of care. Nevertheless, the Hearing Panel and the Board upheld the baseless charges leveled against Plaintiff, while not charging or disciplining the Hospital-employed physician, whose conduct actually severely deviated from and fell below the applicable standard of care.

43.

As to all of the five "trumped up" cases, Plaintiff presented a wealth of evidence, establishing beyond any reasonable dispute, that a sham review process was conducted, and which completely refuted all of the bogus charges against him.

4829-4679-6168, v. 1

44.

The two example cases and charges described by Plaintiff above highlight the arbitrary, capricious, and even corrupt manner in which Defendants have been "file building" against Plaintiff with a goal to eliminate competition from a physician competitor who is not employed by the Hospital and does not create substantial referral business for other doctors employed by TRMC.

45.

Pursuant to the Bylaws, Plaintiff requested a fair hearing to review the decision of the Medical Executive Committee to recommend to the Board of TRMC the adverse actions, described above, relating to his clinical privileges in obstetrics and gynecology at the Hospital. After briefing and erroneous rulings by the Hearing Officer on important issues, including burden of proof and evidentiary standards, addressed above, a hearing was conducted on April 24-26 and May 8, 2018. On or about June 3, 2018, the Hearing Panel, with very minimal discussion, issued a Recommendation and Reasons completely and erroneously affirming every single one of the recommendations of the Medical Executive Committee, even with respect to recommendations which were completely adverse to the opinions of TRMC's own experts, on adverse actions impacting Plaintiff's clinical privileges at TRMC. In doing so, the Hearing Panel affirmed the MEC's decision to recommend suspension of Plaintiff's clinical privileges in obstetrics for six months, requiring him to attend Continuing Medical Education hours and subject him to "chart audit" of thirty (30) of his obstetrical and gynecological cases over the following twelve (12) months. These sanctions are purportedly based on the "totality of the circumstances," and limited conclusory statements made without any record citations.

46.

On or about June 18, 2018, Plaintiff timely submitted a Notice and Incorporated Memorandum of Appeal. After briefing by both sides, oral statements and submission on August 6, 2018, the Board rendered a decision on August 13, 2018, completely affirming the adverse recommendations of the Hearing Panel in their entirety, with no discussion, specific reasons or record citations. The filing of the Original Complaint on August 20, 2018 followed this "Final Decision" from the Board completing the administrative proceedings. There have been important and dramatic developments, detailed hereafter, since the filing of the Original Complaint, which require that an immediate Temporary Restraining Order and Preliminary Injunction be entered by the Court.

47.

On the same date, August 13, 2018, Greg Stock sent correspondence to Dr Morice advising Plaintiff that his clinical privileges in obstetrics at TRMC were suspended for six (6) months, effective immediately. In the same letter, Stock advised Plaintiff as follows: "...the Board approved reappointment of your clinical privileges until the earlier of two occur of (i) the expiration of 4 months from May 15, 2018, the date of reappointment or (ii) such time as the hearing before the ad hoc medical staff committee and the appellate review by the Board have concluded and a final decision has been rendered as set forth in Article XI of the TRMC Medical Staff Bylaws. As the Board has rendered a final decision in the matter of your clinical privileges, you should submit your application for reappointment and clinical privileges for review by the Credentials Committee as soon as possible." Plaintiff filed his Original Complaint on August 20, 2018, approximately one week after Stock issued his letter.

48.

In response to Stock's directive, by letter of December 17, 2018, Dr. Morice formally requested renewal and activation of his privileges in obstetrics at TRMC, effective upon expiration of the suspension, which expires on February 13, 2019. Plaintiff requested to be approved for active obstetrical privileges immediately upon the expiration of the suspension, effective on the morning of February 14, 2019. With that correspondence, Plaintiff submitted to the Credentials Committee the appropriate documentation for renewal of privileges and appointment in obstetrics.

49.

By letter of January 14, 2019, Stock advised Dr. Morice that at its January 8, 2019 meeting, the Medical Executive Committee of TRMC voted to deny Plaintiff's request for obstetrics privileges at the Hospital. Stock further advised Plaintiff in that correspondence that "the MEC concluded that your professional conduct has continued to be substandard as demonstrated by the additional Level III assigned to one of your obstetrics cases and an additional variance report of unprofessional conduct on May 5, 2018, both of which occurred during the investigation, fair hearing and appellate review process at issue in this litigation." Stock further advised Plaintiff that based on these findings, *i.e.*, the alleged continuation of substandard professional conduct based upon one obstetrics case and one "variance report of unprofessional conduct on May 5, 2018," the MEC voted to deny his request for obstetrics privileges at TRMC.

50.

In the same correspondence, Stock specifically advised Plaintiff that the recommendation, based upon two alleged incidents on which Plaintiff has not been charged with violations or had the opportunity to request or participate in a hearing, present any evidence or exercise appeal rights, constitutes an "adverse action" concerning his clinical privileges at TRMC. As such, Stock

further advised Plaintiff that the TRMC Medical Staff Bylaws entitle him, upon written request, to a hearing before a hearing committee convoked in accordance with Article XI of the Medical Staff Bylaws.

51.

Thus, TRMC suspended and/or failed to renew Dr. Morice's privileges in obstetrics as a staff physician for a period of six months from August 13, 2018 through February 13, 2019, based upon five trumped up allegations which are at issue in this lawsuit. Although these purported violations are completely unsupported and Dr. Morice was denied basic constitutional protections in connection with the hearing process and appeals, he has served almost all of the six-month suspension, and complied with all other conditions imposed on him for activation/reinstatement of his privileges, and, as directed by Stock, CEO of TRMC, he timely requested renewal in obstetrics, including activation of his privileges immediately upon expiration of the suspension.

52.

In response and in violation of its own Bylaws, Constitutional protections and basic notions of fairness, the MEC is now seeking to restrict, modify, curtail, further suspend, fail to renew and/or revoke Dr. Morice's privileges, beyond the specific penalty assessed with respect to the purported five violations which are at issue in this lawsuit.

53.

Further, according to Stock in his January 14, 2019 correspondence, the MEC claims it is relying upon two incidents, an alleged Level III "assignment" and an "additional variance report of unprofessional conduct on May 5, 2018," neither of which have been the subject of any formal charges against Dr. Morice; any hearing, presentation of evidence or appeals of such charges, all of which are required pursuant to the TRMC Medical Staff Bylaws and legal requirements,

Page 20

including Constitutional due process protections, before any loss of property rights, such as restriction, further suspension, failure to renew and/or revocation of privileges in obstetrics can be effected. After failing to respond to specific inquiries from Plaintiff's counsel as to whether TRMC intended to deny Dr. Morice's obstetrics privileges at the Hospital while a hearing and appeal of the new adverse action and recommendation are prosecuted, during the afternoon on February 11, 2019 (two days before expiration of the suspension of Plaintiff's obstetrics privileges), Stock advised his counsel that TRMC intends to immediately deny Plaintiff obstetrics privileges, prior to any hearing being conducted or administrative appeal(s) being prosecuted, in violation of TRMC's own Bylaws, the HCQIA and due process protections.

54.

These actions are in direct and flagrant violation of TRMC's own Bylaws, the Healthcare Quality Improvement Act of 1986, Constitutional protections afforded to Dr. Morice and other laws discussed in detail hereafter. TRMC's Bylaws specifically define "adverse action" and "adverse recommendation" as a recommendation (or decision) to deny, restrict, reduce, modify, curtail, suspend, revoke, censure, reprimand, place on probation, or fail to renew clinical privileges or appointment in the medical center or other health care entity for a reason related to professional competence or professional conduct. Further, pursuant to TRMC's Bylaws, any practitioner who receives notice of a recommendation of the MEC that will adversely affect his or her appointment to or status as a member of the Medical Staff or his or her exercise of clinical privileges is entitled to a hearing before an ad hoc Committee of the Medical Staff and further appeal rights. Contrary to these protections, TRMC has notified Dr. Morice of such an adverse recommendation by the MEC, in violation of its Bylaws, the HCQIA and due process requirements is attempting to restrict, suspend, fail to renew, modify, curtail and/or revoke Dr. Morice's privileges prior to affording him

the contractually, legally and constitutionally guaranteed right to a pre-action hearing and appeal(s).

55.

During the six months of his suspension, from August 13, 2018 until February 13, 2019, as requested by TRMC in Stock's August 13, 2018 correspondence, Dr. Morice made arrangements for coverage of his obstetrical patients whom are currently inpatients at TRMC or whom have admissions or procedures scheduled at TRMC. However, from February 14, 2019 forward, Dr. Morice does not have coverage for such obstetrical patients. Thus, this illegal and unconstitutional action by TRMC, which dramatically impacts Dr. Morice's property rights, without pre-action required notice, hearing, opportunity to present evidence and appeal rights, will cause irreparable harm to Dr. Morice and his patients.

56.

Numerous patients of Dr. Morice have admissions and/or procedures scheduled at TRMC in the coming months and Plaintiff, if this illegal action is not prevented immediately, will be unable to treat his patients. If such action is permitted, numerous women with scheduled obstetrical procedures, including delivering their babies, will be left unattended and without proper treatment.

57.

Accordingly, Plaintiff requests that a temporary restraining order and preliminary injunction, and in due course, a permanent injunction, as prayed for herein and as discussed further in the attached Expedited Motion for Temporary Restraining Order and Injunctive Relief, be entered by this Honorable Court.

58.

Upon information and belief and in a further effort to drive Plaintiff out of competition, and despite his privileges at TRMC, the Hospital has been intentionally reducing the revenue Plaintiff earns by engaging in improper and illegal "cherry-picking" referral of higher-paying, non-Medicare/Medicaid patients exclusively to hospital-employed physicians. However, lower-paying referrals such as uninsured or Medicare/Medicaid patients are still sent to non-employee and on-call physicians, such as Plaintiff. These actions are in violation of federal law, including Medicaid and Medicare rules, procedures and requirements. In addition, these actions are in violation of the Hospital's own Bylaws and/or policies, rules and requirements.

59.

Further evidencing its pattern of illegal activity, unfair competition and complete disregard for established legal boundaries, including La. R.S. 46:1051, *et. seq.* and interpreting authorities, TRMC has repeatedly operated, and continues to operate, its Hospital Service District ("HSD") outside of the legal boundaries of its district. By way of example, with full knowledge of the law, and against the request to cease these illegal activities, TRMC has operated and continues to operate and solicit business in St. Mary Parish, without permission from St. Mary's HSD. By way of example:

- All Lafourche HSD employed athletic trainers illegally operating in the St. Mary Parish HSD represent themselves as Thibodaux Regional Medical Center employees, wear clothes that depict Thibodaux Regional Medical Center, use equipment that depicts Thibodaux Regional Medical Center, hold seminars and teach lectures depicting themselves as Thibodaux Regional Medical Center employees, promote Thibodaux Regional Medical Center, and advertise Thibodaux

Regional Medical Center throughout the St. Mary Parish HSD, continuing to do so even after being asked to discontinue operating in the St. Mary Parish HSD by a representative of the St. Mary Parish HSD Board of Commissioners, yet Thibodaux Regional Medical Center continues to illegally operate in the St. Mary Parish HSD knowingly and without permission.

- Thibodaux Regional Medical Center is well aware of the illegal nature of operating its HSD outside of the specified legal boundaries, as proven by its own legal action versus Terrebonne HSD and resulting decision by the trial court, which was affirmed by the Louisiana First Circuit Court of Appeal. See *Hospital Service District Number 2 of the Parish of Lafourche v. Hospital Service District No. 1 of the Parish of Terrebonne*, 97-1792 (La. App. 1 Cir. 6/29/98), 716 So.2d 168. In *Lafourche HSD v. Terrebonne HSD*, the Louisiana First Circuit affirmed the trial court's ruling that the ownership and operation of the Raceland Clinic by Terrebonne HSD was in violation of Louisiana law because Terrebonne HSD was operating outside of its territorial boundaries. See also, *e.g.,* La. Atty. Gen. Op. No. 11-0262, January 30, 2012. (a hospital service district cannot expand beyond its boundaries into another district without an agreement between the districts).

60.

During calendar years 2006 through 2013, while on call at TRMC, Plaintiff received average annual referrals of 15 non-Medicaid/Medicare, insured patients versus 15 uninsured or Medicaid/Medicare ("uninsured") patients. However, during calendar years 2013 - 2018, while on call, he received referrals of 1 insured and 20 uninsured patients.

61.

Doctors in other medical specialties who have privileges at the Hospital, but who like Plaintiff are not employed by the Hospital, have likewise experienced dramatic changes in referrals of insured versus uninsured patients. These practices violate several state and federal laws and constitute, *inter alia,* collusion, unfair trade practices, improper and prohibited referral methods, and insurance and Medicare/Medicaid fraud. These actions by TRMC have caused, and will continue to cause, substantial damages to Plaintiff.

62.

TGO also employs an OB/GYN physician who like Dr. Morice holds medical staff privileges and practices OB/GYN services at TRMC. Like Dr. Morice, TRMC is trying to force Plaintiff's OB/GYN employee out of practice at the Hospital and restrict or deny Plaintiff's OB/GYN employee staff physician privileges by initiating, or causing to be initiated, one or more baseless Level III charges/allegations against this OB/GYN employee and reducing higher-profit referrals to Plaintiff's OB/GYN employee while at TRMC.

## COUNT I

### Violation of Sherman Act § 1, as amended, 15 U.S.C.A. § 1

63.

Paragraphs 1 through 62 are hereby adopted and incorporated by reference.

64.

TRMC is the sole community provider of both inpatient and outpatient hospital services in Thibodaux, Louisiana. As such, TRMC is an essential facility for the delivery of OB/GYN services in the Parish of Lafourche. These services are a lucrative business interest of TRMC. TRMC possesses a dominant share of the OB/GYN market in the Thibodaux/Lafourche region.

Page 25

65.

Reduction, restriction or elimination of physician privileges at TRMC for Plaintiff or other physicians employed by TGO has an unreasonable anti-competitive effect as it decreases the supply of OB/GYNs in the region; it decreases the choice of doctors in the region and will increase the price of OB/GYN services in the region.

66.

Specifically, TRMC has a dominant market share for OB/GYN services in the region and **reducing competition** could make it the sole provider in the region for certain services, allowing it to raise the prices it demands of public and non-public insurers as TRMC has done in the past. Thus, Defendants have economic incentive to eliminate competition.

67.

TRMC, the MEC, the Credentials Committee, the Board of Commissioners, and Stock have control over the decision-making process to reduce, restrict, or eliminate Plaintiff's privileges. They also have the ability to coerce and unduly influence that decision, **and they have done so**.

68.

Plaintiff does not have staff physician privileges at any tertiary level facility except TRMC. Plaintiff's entire Obstetrical practice is based at TRMC and all of his Obstetrical privileges are with TRMC. The termination of Plaintiff's privileges at TRMC will cut off his access to compete in the region's market, especially regarding Obstetrical services that must be performed at a facility like TRMC.

69.

Defendants are acting in a concerted manner to restrain trade and commerce by seeking to effectively restrict, limit, and terminate Plaintiff's privileges at TRMC, which will have the effect of eliminating him from the competitive OB/GYN market in the region. In addition, TRMC is illegally operating outside of its designated HSD and illegally manipulating referrals of Medicare/Medicaid patients and non-medical patients, as amplified above. These actions are so inimical to competition and so unjustified that they are conclusively presumed to be illegal, particularly as they were not done in the public interest but in Defendants' commercial interest.

70.

Defendants' illegal actions are injuring not only the community, but also Plaintiff, as he is being targeted for suspension, restriction or termination of privileges at TRMC and receiving only lower-revenue referrals at TRMC in an effort to "squeeze out" Plaintiff financially. If Defendants are permitted to carry out these illegal actions, Plaintiff will no longer able to practice his primary area of medicine in the community where he has built an office and a home, and employs dozens of local staff.

71.

Because of the irreparable harm that Plaintiff will suffer if his privileges are not renewed, suspended or terminated and because of the harm he has suffered to date as described above, Plaintiff is entitled to a temporary restraining order, injunctive relief, declaratory judgment and damages for the injuries caused by the Defendants and the damage being caused to his practice. Since Plaintiff has been advised of suspension, TRMC's employees are wildly spreading rumors and further irreparably damaging his reputation by discussing his suspension within hearing range of patients within the Hospital. Continued discussion and talk amongst TRMC employees and staff

about Plaintiff's suspension and rumors therein will continue to further irreparably harm to him. Without a temporary restraining order and injunction to allow Plaintiff to resume staff privileges, this irreparable harm will continue, damaging Plaintiff and those OB/GYN physicians and all staff associated with his medical practice, a direct competitor to TRMC's owned OB/GYN medical practice.

## COUNT II

### Violation of Sherman Act § 2, as amended, 15 U.S.C.A. § 2

72.

Paragraphs 1 through 71 are hereby adopted and incorporated herein by reference.

73.

TRMC is the sole community provider of both inpatient and outpatient hospital services in Thibodaux, Louisiana. Other than Plaintiff's clinic, where he cannot provide hospitalized obstetrical care, TRMC is also the sole provider of OB/GYN services in Thibodaux, Louisiana. TRMC possesses a dominant share of the OB/GYN market in the Thibodaux area, specifically, TRMC is believed to possess at least 75 percent of that market.

74.

TRMC's OB/GYN market power arises from its acquisition and control of the only competing OB/GYN practice to Plaintiff, which, combined with full TRMC resources results in costs advantages, price leadership, including pricing trends and practices, and homogeneity of services in the market. TRMC controls entry into the Thibodaux OB/GYN market through its peer review and credentialing processes.

75.

TRMC, through its peer-review process, has acted without a valid business reason or concern for quality of service or efficiency in scheming to suspend and/or revoke Plaintiff's staff

privileges. This is evidenced by the manner in which the MEC, of which Plaintiff's competitors were members, continued to review his cases, even after charging Plaintiff with serious violations and despite evidence (and an outside reviewer) showing the alleged violations were groundless. Further, the "fair hearing" provided for in TRMC's Bylaws was conducted notwithstanding the complete failure to comply with constitutional protections, including, but not limited to, due process and equal protection, with no directive on burden of proof or evidentiary standards.

76.

Defendants' actions have caused and continue to cause injury to Plaintiff. He is no longer receiving referrals of any privately insured patients from TRMC employee physicians; Dr. Morice's reputation has been and is being damaged; and, if Defendants are permitted to carry out their illegal scheme, Plaintiff will not be able to practice his primary area of medicine in the community where Plaintiff has built an office and a home and employs dozens of local staff.

77.

Plaintiff is entitled to a temporary restraining order, injunctive relief, declaratory judgment and damages for the injuries caused and being caused by the Defendants and the damage caused to his practice.

## **COUNT III**

### **Breach of Contract**

78.

Paragraphs 1 through 77 are hereby adopted and incorporated herein by reference as if fully set forth herein.

79.

This is an action for past and future consequential and compensatory damages incurred by Plaintiff as a result of TRMC's breach of its contract as embodied in the Bylaws and related agreements between the parties.

80.

The Bylaws and related documents are a binding contractual obligation between TRMC and Plaintiff. See, e.g., *Granger v. Christus Health Central Louisiana*, 2012-1892 (La. 6/28/13), 144 So.3d 736 2013. TRMC breached its obligations to Plaintiff, as set forth above in this Complaint, as well in the following manners: (1) by engaging in an illegal, concerted effort to suspend, restrict, modify, fail to renew and/or terminate Plaintiff's medical staff and clinical privileges at the Hospital; (2) by failing to comply with due process and equal protection requirements such as failing to give Plaintiff a fair hearing; (3) by failing to follow TRMC's Bylaws in bringing adverse actions against Plaintiff without procedures described in the Bylaws; (4) by fabricating Level III and IV violations and allegations of professional breaches for Defendants' own financial gain; (5) by failing to review or consider the overwhelming and dispositive evidence, and opinions from third party reviewers, exonerating Plaintiff; (6) by treating Plaintiff differently than other similarly situated Hospital-employed physicians; (7) by illegally diverting or failing and refusing to refer insured patients to Plaintiff; (8) by manipulating referrals of Medicare/Medicaid patients; (9) by illegally soliciting and operating outside of its designated hospital service district; (10) by subjecting Plaintiff to denial, restriction, revocation, modification, suspension and/or failure to renew his obstetrical privileges without affording him a hearing, the opportunity to present evidence and appeal rights prior to imposing such action and taking away

valuable property rights, including his privileges at TRMC; and (11) other and further breaches to be established at trial.

81.

The foregoing breaches of TRMC's contractual obligations to Plaintiff have caused and will continue to cause him to suffer irreparable injury, loss of professional standing and significant loss of earning capacity and income, including future income, irreparable damage to Plaintiff's reputation, and general damages.

## COUNT IV

### Bad Faith Breach of Contract

82.

Paragraphs 1 through 81 are hereby adopted and incorporated fully as set forth herein.

83.

This is an action for general damages including mental anguish, humiliation and embarrassment directly resulting from bad faith and intentional breach of contract by Defendants in contravention of the duty of good faith imposed upon contractual relationships under Louisiana Civil Code Article 1997.

84.

TRMC's bad faith breach of contract resulted directly from the interference and involvement of Stock, the MEC (including those who are competitors of Plaintiff), the Credentials Committee, the Board of Commissioners, and other employees and agents of TRMC in a conscious effort to restrict and eliminate Plaintiff from competition in the OB/GYN market in the Thibodaux area. Each of the punitive actions initiated by Defendants follow closely.

85.

Defendants' unjustified interference with Plaintiff's privileges at TRMC constitutes an intentional bad faith breach of TRMC's contractual obligations, which have caused pecuniary and non-pecuniary damages to him in the form of embarrassment, mental anguish, and humiliation, as well as continuing damage to his professional reputation. Defendants are liable to Plaintiff, for pecuniary, compensatory, and general damages for the bad faith breach of contract caused by Defendants in their efforts to eliminate Plaintiff from competition in the area.

## COUNT V

### Tortious Interference with Contract

86.

Paragraphs 1 through 85 are hereby adopted and incorporated herein by reference as if fully set forth herein.

87.

The Bylaws are a binding contractual obligation between TRMC and Plaintiff. TRMC, Stock as CEO of TRMC, the MEC, the Credentials Committee, and the Board were aware of that binding contractual obligation.

88.

Defendants' actions, as set forth in this Complaint, constitute a deliberate interference with the contract between Plaintiff and TRMC, particularly concerning the medical staff and clinical privileges given to Plaintiff pursuant to that contract. The bad faith actions undertaken by these parties were intended to and had the effect of causing TRMC to wrongfully breach its contractual obligations regarding medical staff privileges. Accordingly, these parties are liable to Plaintiff for compensatory and general damages as a result of their intentional and bad faith inducement of

4829-4679-6168, v. 1

TRMC to breach its contractual obligations to Plaintiff by seeking to "file build" on him in a concerted effort to restrict, modify, suspend, limit, revoke, fail to renew and/or terminate his privileges without basis, justification, cause or due process.

## COUNT VI AND VII

### Abuse of Rights and Misrepresentation

89.

Paragraphs 1 through 88 are hereby adopted and incorporated herein by reference as if fully set forth herein.

90.

This is an action for damage for mental anguish, humiliation, embarrassment, loss of professional reputation and loss of income for Defendants' intentional abuse of rights.

91.

Defendants' bad faith actions referred to in this Complaint constitute an abuse of rights because the above-named Defendants have intentionally manipulated and continue to manipulate the professional review proceedings in order to harass and damage Plaintiffs' reputation and earning capacity and to eliminate him from competition in the OB/GYN market in the Thibodaux area. The actions of the Defendants, their agents and employees, were undertaken without a legitimate motivation or basis and not for the purpose of assuring Plaintiff performed within the appropriate professional standards of care. Rather, through their misrepresentations, Defendants, their agents and employees, manipulated the members of the professional review process in a bad faith effort to eliminate Plaintiff from competition. Defendants effectively took over the peer review process, which was fatally flawed as set forth above, and transformed those proceedings into an inquisition designed solely to remove Plaintiff from competition with TRMC.

Page 33

Alternatively, or in addition, one or more of the Defendants have made negligent misrepresentations, causing harm and damages to Plaintiff.   As such, Defendants' actions constitute an abuse of rights and misrepresentation under Louisiana law.

## COUNT VIII

### Intentional Infliction of Emotional Distress and Defamation

92.

Paragraphs 1 through 91 are hereby adopted and incorporated herein by reference as if fully set forth herein.

93.

This is an action for general damages for infliction of mental anguish, loss of professional reputation, embarrassment and severe emotional distress against Defendants, in their individual capacities and as officers, employees and agents of TRMC.

94.

Defendants and their agents and employees engaged in a pattern of deliberate and repeated acts of harassment of an extreme and outrageous nature that were intended to and did cause Plaintiff severe emotional distress.   The repeated actions of the Defendants, which were ratified by TRMC, were intended to demean, harass and eventually deprive Plaintiff of his staff privileges and standing in the medical community.   Such actions constitute a continuing tort because they have continued unabated from approximately December, 2014 to the present.   Repeated acts of harassment directed toward Plaintiff have permeated the professional review process and caused serious general damages to him, as well as damage to his reputation and standing.   Furthermore, Defendants have defamed Plaintiff as a result of levelling untrue and unfounded charges against

Plaintiff, causing him general damages and damages to his good personal and professional reputation and good standing in the Thibodaux community.

## COUNT IX

### Violation of the LUTPCPL – La. R.S. 51:1405, *et seq.*

95.

Paragraphs 1 through 94 are hereby adopted and incorporated herein by reference as if fully set forth herein.

96.

This action is an action for damages and attorney's fees arising from the violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. § 51:1405, *et seq.* ("LUTPCPL") against Defendants.

97.

Plaintiff possesses a right of action and a cause of action under the LUTPCPL against Defendants because Plaintiff is both a competitor and consumer of the OB/GYN services offered by TRMC and has suffered a significant economic loss and damages to his professional reputation as a result of the wrongful acts of Defendants as set forth in this Complaint.

98.

Defendants have engaged in and continue to engage in practices against Plaintiff that seek to restrict or monopolize the competition in the OB/GYN market in the Thibodaux, Louisiana area. The actions of Defendants offend public policy and are unethical, oppressive, unscrupulous, and illegal as well as substantially injurious to Plaintiff and the community at large.

99.

Among other actions, Defendants have engaged in an ongoing course of manipulation of the professional review process at TRMC in order to restrict and deny Plaintiff medical staff and clinical privileges and the ability to practice medicine in the region.  Defendants have made repeated misrepresentations concerning Plaintiff to TRMC's professional review committee and others and have wrongfully deprived him and are seeking to further wrongfully deprive him of his right to use the services of TRMC.  Moreover, Defendants have attempted to eliminate Plaintiff as a competitor by manipulating referrals of Medicare/Medicaid patients, operating outside of their designated hospital service district and making false and malicious statements concerning his professional competence through the medical community in an effort to eliminate him as a competitor.

## COUNT X

### Violations of Plaintiff's Due Process and Equal Protection Rights

100.

Paragraphs 1 through 99 are hereby adopted and incorporated herein by reference as if fully set forth herein.

101.

The Fourteenth Amendment of the United States Constitution prevents any state taking of property without due process, and 42 U.S.C. § 1983 permits a civil action for any such violation.

102.

Physician privileges are considered property as defined in the Constitutions of the State of Louisiana and the United States of America.

4829-4679-6168, v. 1

103.

TRMC is a state actor in that it is a public entity and political subdivision of the State of Louisiana. All other Defendants are agents or divisions of TRMC.

104.

Defendants' actions as described in this Complaint include, *inter alia,* reducing the amount of income earned by Plaintiff while exercising his privileges at TRMC through abuse of referrals at TRMC and including fabricating numerous violations against Plaintiff that may be used to restrict or eliminate his privileges at TRMC. As a result, Defendants have already significantly reduced the value of Plaintiff's property interest in his privileges at TRMC, and if Defendants succeed in their scheme, they will fully and irreparably destroy Plaintiff's constitutional property interest in his privileges at TRMC.

105.

Further, Defendants' procedure in recommending, reviewing, and assigning these trumped up charges against Plaintiff were all done without due process and without following the requirements of the HCQIA (and in some instances, TRMC's own Bylaws). As a result, Defendants have taken and seek to fully take Plaintiff's constitutionally protected property interests without the due process required by the United States Constitution or the HCQIA. Moreover, TRMC's Bylaws are fatally defective because they are silent as to burden of proof and evidentiary standards to be utilized in the "fair hearing." This fatal defect resulted in a hearing which clearly violated constitutional protections and all notions of fundamental fairness, including due process and equal protection.

106.

Within the past three weeks, Defendants have acted to suspend, deny, fail to renew, modify, curtail and/or revoke Plaintiff's staff privileges at TRMC without affording him any pre-action hearing, opportunity to present refuting evidence or exercise contractually, legally and constitutionally guaranteed appeal rights or other due process whatsoever.

107.

Defendants are liable to Plaintiff for the damages he has sustained to date for Defendants' taking of Plaintiff's property without due process of law, violation of equal protection mandates and any further taking Defendants might accomplish.

108.

Because of the irreparable harm that Plaintiff and the community at large will suffer if Defendants are successful in suspending, failing to renew and/or terminating his privileges at TRMC without due process, a temporary restraining order is necessary and Defendants should be enjoined from adversely impacting, or endeavoring to adversely impact, failing to renew, restricting, denying, suspending, revoking or terminating Plaintiff's clinical and/or medical staff privileges, including, but not limited to his gynecological and/or obstetrics privileges, at TRMC, and from any further reporting, reviewing, and/or assigning any further violations against Plaintiff and/or restricting or revoking his privileges without the due process and equal protection required by law—which requirements Plaintiff requests the Court spell out in its order.

**WHEREFORE,** plaintiff, Natchez J. Morice, III, M.D. prays that:

1) A Temporary Restraining Order be issued herein immediately, in the form and substance of the proposed Temporary Restraining Order attached hereto, and a Preliminary Injunction be issued, as soon as possible, in the form attached hereto,

according to law, enjoining Hospital Service District No. 3, Parish of Lafourche d/b/a Thibodeaux Regional Medical Center ("TRMC"), the Board of Commissioners of Thibodaux Regional Medical Center, the Medical Executive Committee of the Medical Staff of Thibodaux Regional Medical Center, the Credentials Committee of Thibodaux Regional Medical Center, and Greg Stock, Chief Executive Officer of Thibodaux Regional Medical Center (collectively, "Defendants"), and all employees, agents, committees, officers, members or other persons or entities acting by, through, under or in active concert or in participation with or contracted, either directly or indirectly, by any of them from adversely impacting, or endeavoring to adversely impact, failing to renew, restricting, limiting, denying, denying application for, suspending, revoking, not allowing, not maintaining, interfering with or terminating Plaintiff's clinical and/or medical staff privileges, including, but not limited to, his gynecological and/or obstetrics privileges at TRMC during or prior to completion of Plaintiff's requested hearing and appeals of the MEC's recommendation and/or any related action referenced in Greg Stock's letter to Dr. Morice, dated January 14, 2019, a copy of which is attached hereto as Exhibit 1;

2) Preliminary Injunction and, in due course, Permanent Injunctive Relief be granted and issued, against and enjoining TRMC and the other Defendants and persons/entities from adversely impacting, or endeavoring to adversely impact, failing to renew, restricting, limiting, denying, denying application for, suspending, revoking, not maintaining, not allowing or terminating Plaintiff's clinical and/or medical staff privileges, including, but not limited to, his gynecological and obstetrics privileges at TRMC during or prior to completion of Plaintiff's requested hearing and appeals of the

4829-4679-6168, v. 1

MEC's recommendation and/or any related action referenced in Greg Stock's letter to Dr. Morice, dated January 14, 2019;

3) Preliminary and Permanent Injunctive Relief against TRMC and the other Defendants from further proceeding with the prosecution or entry of any actions, charges or decisions which adversely affect Plaintiff's clinical or medical staff privileges at TRMC, or reporting any of the pending charges/allegations of violations, or any rulings or decisions relating to any such charges or allegations of violations by Plaintiff, or any other of Defendants' improperly initiated actions, or resulting decisions, against Plaintiff to the National Practitioners Data Bank or any other entity or person;

4) Additional injunctive relief ordering TRMC to fully reinstate and renew Plaintiff's medical staff and clinical privileges and to remove from its records and destroy all documents relating to the Level charges and adverse actions against Plaintiff, and ordering Defendants to fully comply with all state and federal laws, including insurance contracts, laws and regulations with respect to patient referrals, and operation within its designated service district;

5) A judgment declaring that TRMC has violated the law and Plaintiff's rights and that TRMC's Level and professional charges/allegations and any resulting suspension, termination, revocation, or failure to renew, or other adverse action against Plaintiff are withdrawn and declared revoked, null and void and of no force and effect and that Plaintiff's privileges are fully reinstated;

6) Actual, consequential, general and compensatory damages, including damages for lost income, past and future, treble damages, against Defendants, jointly, severally and *in solido*, for intentional infliction of emotional distress, violation of the LUTPCPL, the

Sherman Act, breach of contract, misrepresentation, tortious interference with contract, bad faith breach of contract, violation of constitutional rights, defamation and abuse of rights and damage to reputation/standing;

7) General and compensatory damages permitted under Louisiana law against Defendants for tortious interference with contract;

8) Lost income, actual, consequential, general and compensatory and treble damages relating to Defendants' violations and illegal actions with respect to patient referrals;

9) Reasonable costs and attorney's fees for instituting and maintaining this action; and

10) All other legal and equitable relief as this court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury for all issues so triable.

Respectfully submitted:

By: *Michael R. C. Riess*

Michael R. C. Riess (#2073)
Thomas P. Henican (#19292)
**RIESS LEMIEUX, L.L.C.**
1100 Poydras Street, Suite 1100
New Orleans, Louisiana 70163
Telephone: (504) 581-3300
Facsimile: (504) 581-3310
E-mail: mriess@rllaw.com
E-mail: thenican@rllaw.com

*And*

Christopher H. Riviere (#11297)
Todd M. Magee (#35415)
**LAW OFFICE OF CHRISTOPHER H. RIVIERE**
**A Professional Law Corporation**
McCulla House
103 West Third Street
Thibodaux, Louisiana 70301
Telephone: (985) 447-7440
Facsimile: (985) 447-3233
E-mail: criviere@rivierelaw.com
E-mail: tmagee@rivierelaw.com
*Attorneys for Plaintiff, Natchez J. Morice, III, M.D.*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

NATCHEZ J. MORICE, III, M.D.

**VERSUS**

HOSPITAL SERVICE DISTRICT NO. 3
PARISH OF LAFOURCHE D/B/A
THIBODAUX REGIONAL MEDICAL
CENTER; THE BOARD OF
COMMISSIONERS OF THIBODAUX
REGIONAL MEDICAL CENTER; THE
MEDICAL EXECUTIVE COMMITTEE OF
THE MEDICAL STAFF OF THIBODAUX
REGIONAL MEDICAL CENTER; THE
CREDENTIALS COMMITTEE OF TRMC
AND GREG STOCK, CHIEF EXECUTIVE
OFFICER OF THIBODAUX REGIONAL
MEDICAL CENTER

CIVIL ACTION NO. 2:18-cv-07945

SECTION M          DIVISION 3

JUDGE BARRY W. ASHE

MAG. JUDGE DANIEL E. KNOWLES

*JURY TRIAL DEMANDED*

## VERIFICATION

STATE OF LOUISIANA

PARISH OF _Lafourche_

Before me, the undersigned Notary Public, personally came and appeared:

**NATCHEZ MORICE, III, M.D.**

Who, after being duly sworn, did depose and state that he is the Plaintiff in the captioned case;

that he has read the original Verified First Supplemental and Amending Complaint for

Temporary Restraining Order, Injunctive Relief, Declaratory Judgment and Damages, Including

Demand for Jury Trial, filed or to be filed, in the captioned case and all of the exhibits thereto if

applicable; and that the allegations and exhibits contained therein are true and correct.

NATCHEZ MORICE, III, M.D.

SWORN TO AND SUBSCRIBED
BEFORE ME, NOTARY, THIS
12th DAY OF _February_, 2019.

NOTARY PUBLIC

**George M. Riviere**
Bar Roll #: 37283
Notary ID#: 149054

4847-1453-4535, v. 1